PARAN MOODY ET UX., APPELLANTS, VS. THE JACKSONVILLE, TAMPA AND KEY WEST RAILROAD COMPANY ET ALS., APPELLEES.

1. The State has the right to make a compulsory purchase of, or to condemn the property of the citizen for a public use or purpose, just compensation being made to the citizen for it.

2. Such right the State through the legislative department of the government may grant to an incorporated railway company having the usual franchises and duties attaching to such companies, to the extent that the property is necessary for the use of the corporation in accomplishing the purposes of its creation. The

# SUPREME COURT.

statute, however, must provide just compensation to the citizen for his property so authorized to be taken.

3. Neither an award of damages, nor a judgment against a corporation for damages ascertained, or to be ascertained by commissioners, is a just compensation to the citizen for the appropriation of his property by the corporation to its use in the construction of its road.

4. The designation of the corporation in whom such right to condemn for public use is to be vested, the method of condemnation and the fixing the nature and extent of the compensation to be made for the property, are powers vested exclusively in the legislative department of the government.

5. In this case an entry for the purpose of continuing an unlawful appropriation or taking was enjoined. Subsequently the injunction was dissolved upon the corporation obtaining a bond approved by the Judge under which the value of the property to be taken was secured to be paid after appraisement to the landowner : *Held,* In the absence of legislation giving such right to the corporation, that the court had no power to authorize a compulsory purchase by it or to prescribe a method of condemnation, or fix a compensation, just or unjust; that these were legislative "functions," which no part of the judicial department of the government could exercise unless the power so to do was "expressly provided for by the Constitution." The last clause of section 8 of the Declaration of Rights, Article 3 of the Constitution, and so much of chapter 1987 of the Laws, as proposes to vest in railroad corporations the right to condemn property and to fix the compensation to be made, construed.

Appeal from the Circuit Court for Duval county.

The facts of the case are stated in the opinion.

*E. M. L'Engle* for Appellants, cited :

Cooley's Const. Lim., [618], [620] ; Morawetz on Private Corp., §32 ; Bradley vs. N. Y. and N. H. R. R. Co., 21 Conn., 306–7 ; 4 Hill, (N. Y.) 81 ; Charles River Bridge vs. Warren Bridge, 11 Peters, 420 ; Perrin vs. C. and D. C. Co., 9 How., 172 ; Sprague vs. Birdsall, 2 Cowen, 420 ; Young vs. McKenzie *et al.*, 3 Kelly, (Ga.) 45 ; Mims vs. M.

and W. R. R. Co., Ib., 338 ; Young vs. Harrison *et al.*, 6 Ib., 150; B. B. & C. R. R. Co. vs. Terris, 26 Texas, 601–2 ; Opinion of Sharkey, C. J., in Thompson vs. G. G. R. R. & B. Co., 3 How., (Miss.) 248, *et seq. ;* Walther vs. Warner, 25 Mo., 277 ; Shepardson vs. M. & B. R. R. Co., 6 Wis., 605 ; Powers vs. Bears, 12 Wis., 213 ; McCann vs. Sierra Co., 7 Cal., 121 ; Carson vs. Coleman, 3 Stockton, 106 ; Rubottom vs. McClure, 4 Blackf., 505 ; Loop vs. Chamberlain, 20 Wis., 135 ; White vs. N. & N. R. R. Co., 7 Heisk., (Tenn.) 518 ; S. W. R. R. Co. vs. S. & A. Tel. Co., 46 Ga., 43 ; Gray vs. 1st Div. of St. Paul and Pacific R. R. Co., 13 Minn., 315 ; U. S. vs. Russell, 13 Wall., 627 ; Parham vs. Justices, 9 Ga ; 341 ; Riber vs. Striker, 63 N. Y., 136 ; Piscataqua Bridge vs. N. H. Bridge, 7 N. H., 70 ; Bloodgood vs. M. & H. Ry. Co., 18 Wend., 9 ; 2 Kent, (12th Ed.) 339, *et seq.*, and notes ; 1 Redfield on R., 297, *et seq.*, and notes ; Ashe vs. Cummings, 50 N. H., 591; Lowell vs. Boston, 111 Mass., 457, 454, 467 ; Angell on Water Courses, (7th Ed.) §466 a, (p. 624) note 1, and p. 651, n. 4 ; McC. Digest, p. 281, §14 ; McC. Digest, p. 282, §16 ; McC. Digest, §17 ; Burns vs. M. & M. R. R. Co., 9 Wis., 450 ; McAulay vs. W. V. R. R. Co., 33 Vt., 311 ; Carson vs. Coleman, 3 Stockton, 106 ; Miller vs. A. & S. R. R. Co., 6 Hill, (N. Y.) 61 ; 7 N. H., 70 ; 1 Story's Eq. Jurisp., §§64, 96, 177 ; Bacon's Abridgment, Title Court of Chancery, C ; Authorities cited in 3 Wait's A. & D., 150 ; Walther & Warner, 25 Mo., 285 ; Piscataqua Bridge vs. N. H. Bridge, 7 N. H., 71, 72 ; Henniker vs. Contoocook Valley R. R. Co., 29 N. H., (9 Foster) 152, and authorities cited ; Brown vs. Beatly, 34 Miss., 243–4, and authorities cited ; 50 N. H., 616 ; Henderson *et al.* vs. N. Y. C. R. R., 78 N. Y., 423 ; I Story's Eq. Jurisp., 64 k to §77.

*John T. & George U. Walker* on same side, cited:

2 Kent's Comm's., (4th Ed.) 339 ; 1 Blackstone Comm's., 139 ; Webster's Dictionary ; Pumpelly vs. G. B. Co., 13 Wall., 166, 177, 178, 179, 181 ; Orr vs. Quinby, 54 N. H., 646 ; 54 N. H., 611 ; 1 Story's Eq. Jur., secs. 64, 96, 177 ; U. S. vs. U. P. R. R., 91 U. S., 85 ; 3 Kelly, (Ga.) 45 ; Cooley Const. Lim., 182, 184 ; Thompson vs. G. G. R. R., 4 How., 247 ; White vs. N. & N. R. R. Co., 7 Heiskell, 518 ; Fletcher vs. Peck, 6 Cranch, 87 ; Morris vs. People, 3 Denio, 381 ; DeCamp vs. Eveland, 19 Barb., 81 ; Clark vs. People, 26 Wend., 599 ; Cons. of Ala., Art. 2, Sec. I ; Bloodgood vs. M. & H. R. R., 18 Wend., 9 ; 1 Redfield on Railways, 261, sec. 71 ; Henderson *et al.* vs. N. Y. C. R. R. R., 78 N. Y., 423 ; Gardner vs. Newburgh, 2 Johns., 162 ; Rogers vs. Bradshaw, 20 Johns., 735 ; Jerome vs. Ross, 7 Johns., 316 ; Bloodgood vs. M. & H. R. R., 14 Wend., 53 ; 18 Wend., 10 ; Chapman *et al.* vs. Gates, 54 N. Y., 143, 146 ; S. W. R. R. Co. vs. S. & A. Tel. Co., 46 Ga., 51 ; 12 Am. Reports, 585 ; Parham vs. The Justices of Decatur Co., 9 Ga., 341 ; Bohlman vs. Green Bay and L. P. R. R. Co., 30 Wis., 107 ; Powers *et al.* vs. Bears *et al.*, 12 Wis., 213 ; Shepardson vs. Milwaukee and Beloit R. R. Co., 6 Wis., 605 ; Pittsburg vs. Scott, 1 Barr, 309, (1 Pa. St.) ; Commonwealth vs. Wood, 10 Pa. St., 97 ; White vs. R. R. Co., 7 Heisk., 533 ; Butler vs. Sewer Commissioners, 39 N. J., (Law) 665 ; Bonaparte vs. C. & A. R. R. Co., 1 Bald., C. C. U. S.,— ; Ashe vs. Cummings, 50 N. II., 591 ; Henry vs. Dubuque & Pacific R. R., 2 Iowa, 288 ; Sater vs. Plank Road Co., 1 Iowa, 386 ; Syracuse vs. Cincinnati, 14 Ohio, 174 ; Gray vs. First Div. of St. P. & P. R. R. Co., 13 Minn., 315 ; B. B. Brazos & Colorado R. R. Co. vs. Ferris, 26 Texas, 588 ; Haverhill Bridge Proprietors vs. County Commissioners, 103 Mass., 124 ; s. c., 4 Am. Reports, 519 ; McAulay vs. Vermont Railroad Company, 33 Vermont, 311 ; Stacey vs. Vermont Central Rail-

road Company, 27 Vermont, 39 ; Piscataqua Bridge vs. N.
H. Bridge, 7 N. H., 35 ; Pet. of Mt. Wash'n. So. Co., 35
N. H., 134 ; Bristol vs. New Chester, 3 N. H., 524, 535 ;
Eastman vs. Co., 44 N. H., 150 ; San Mateo Water Works
vs. Sharpstein, 50 Cal., 284 ; Sanborn vs. Belden, Judge,
51 Cal., 266 ; Vilhac vs. S. & I. R. R. Co., 53 Cal., 208 ;
Cairo and Fulton R. R. Co. vs. Turner, 21 Ark., 494 ; People *ex rel.*, D. & S. R. R. Co. vs. McRoberts, 62 Ill., 38 ;
People *ex rel.*, vs. Williams, 51 Ill., 63 ; Hall *et al.*, vs.
People, 57 Ill., 309 ; 3 Stock., 106 ; 6 Hill, 61 ; 7 N. H.,
70 ; Kennedy vs. M. & St. Paul Railway Company, 22 Wis.,
581 ; Loop vs. Chamberlain, 20 Wis., 135.

*Fleming & Daniel* for Appellees, cited :

Declaration of Rights, sec. 8, (last clause,) Constitution of
Florida, p. 4 ; Pierce on Railroads, 162 ; Pierce on Railroads, 163 ; Cooley on Constitutional Lim., 694 ; Mitchell
vs. Maxwell, 2 Fla., 597 ; *Ex-parte* J. C. H., 17 Fla., 369 ;
Pierce on Railroads, 164 ; Cooley's Const. Lim., (5th Ed.,)
p. 697 ; 1 Redfield on Railways, (5th Ed.,) p. p. 296, 297,
298, 299, and notes 5, 6 and 7 ; Cairo & Fulton Railroad
Co. vs. Turner, 31 Ark., 494 ; 25 Am. Reports, 564, 570 ;
Bloodgood vs. The Mohawk & Hudson R. R. Co., 18 Wend.,
pp. 9, 16, 17, 18, 77 ; Fox vs. Western Pac. R. R. Co., 31
Cal., 538 ; Smith *et al.*, vs. Helmer, 7 Barb., 416 ; Gould
vs. Glass, 19 Id., 190 ; Rexford vs. Knight, 1 N. Y., 308 ;
Thatcher *et al.*, vs. Dartmouth Bridge Co., 18 Pick., 501 ;
Tuckahoe Canal Co. vs. Tuckahoe Railroad Co., 11 Leigh,
77 ; Symonds *et al.*, vs. Cincinnati, 14 Ohio, 171 ; Hatch vs.
Vt. Cent. R. R. Co., 25 Vt., 66 ; People *ex rel.* Green vs.
Michigan Southern R. R. Co., 3 Mich., 496 ; Smith vs. McAdam, Id., 506 : Rubottom *et al.*, vs. McClure, 4 Blackf.,
305 ; Hankins vs. Lawrence, 8 Id., 266 ; New Albany and

Salem R. R. Co., vs. Connelly, 7 Ind., 32; Hamilton vs. Annapolis and Elk Ridge R. R. Co. *et al.*, 1 Md., ch. 107; Commissioners, &c. vs. Bowie, 34 Ala., 461; Raleigh & Gaston Railroad Co. vs. Davis, 2 Dev. & Balt., Law, 451; Orr vs. Quinby, 54 F. N. H., 590; Ash vs. Cummings, 50 N. H., 591; 1 Redfield on the Law of Railways, p. 298, note; 1 Redfield on Railways, 277, 278; Pierce on Railways, 212; Cooley on Const. Lim., 702; Alabama and Florida Railroad Company vs. Burkett, 46 Ala., 578; 3 Mass., 307, 310; Baldwin, U. S. Circuit Court Reports, (Eastern Dist. of Pa. and New Jersey,) pp. 229, 230; 1 Am. and Eng. R. R. Cases, p. 9; Mills on Eminent Domain, Sec. 89; Cooley's Const. Lim., p. 695, note 2; The People vs. Heyden, 6 Hill, 360, 361; Rixford vs. Kington, 11 N. Y., pp. 313, 314; Hooker vs. The Hew Haven and Northampton Co., 14 Ct., 146, (36 Am. Dec., 477,); Stevens vs. The Proprietors of the Middlesex Canal, 12 Mass., 468; 1 High on Injunctions, sec. 622; 1 High on Injunctions, sec. 625; Perks vs. Wycombe, R. R. Co., 3 Gifford, 662; Gardner vs. Newburgh, 2 Johns. Ch., 161; (7 Am. Dec., 526); Pumpelly vs. Green Bay Co., 13 Wall., 178; North Pac. R. R. Co. vs. Barnesville and Moorehead R. R. Co. *et al.*, (U. S. Ct. Ct., North. Dist. of Minn.,) 1 Am. and Eng. Ry. cases, p. 8; Mad. Av. Baptist Church vs. Baptist Church in Oliver Street., 73 N. Y., 95; Henderson vs. The N. Y. C. R. R. Co., 78 N. Y., 438; Cooley's Const. Lim., p. 218; Cooley on Const. Lim., pp. 221, 222; Cooley on Const. Lim., p. 219; Ogden vs. Saunders, 12 Wheat., 213; Adams vs. Howe, 14 Mass., 340; Kellog vs. The State Treasurer, 44 Vt., 256, 259; Slack vs. Jacobs, 8 W. Va., 612; Carpenter vs. Atherton, 25 Cal., 569; Metropolitan vs. Van Dyck, 27 N. Y., 460; People vs. Alberston, 55 Id., 54; Cotton vs. Commissioners, 6 Fla., 614; Morrison vs. Springer, 15 Iowa, 348; Stewart vs. Supervisors, 30 Id.,

15 ; State vs. Cummings, 36 Mo., 277 ; Ash vs. Parkinson, 5 Nev., 35 ; Bridges vs. Shallcross, 6 W. Va., 570 ; Charles River Bridge vs. Warren Bridge, 6 Pick., 415.

MR. JUSTICE WESTCOTT delivered the opinion of the court.

The Jacksonville, Tampa and Key West Railroad Company, through Ambler and others, its agents and contractors, without the consent of the plaintiff, Mrs. Moody, and without previous condemnation of her land, had not only located their railroad over her land, but had entered upon it and were in the act of appropriating it to the construction of its road by felling trees, digging excavations and throwing up embankments. The court, upon the bill of plaintiffs setting up these facts, plaintiffs alleging also that they did not believe said corporation would have property that could be reached by a judgment at law for damages, enjoin the defendants from entering upon the land, and the corporation and its agents from felling trees, cutting excavations, throwing up embankments, or from proceeding with the building of the road on said land until the further order of the court. The corporation and its agents answering admit that after location of its line through the land described they have entered thereon with their laborers, that they have made some excavations and thrown up some embankments in the course of the construction of the said railroad, as the said road crosses the said lands within the limits of the statutory width allowed, and affirm a right to do so under the Laws of Florida and their charter. They admit that they have not paid for the said land or agreed to pay any specific sum therefor, and affirm that they have exhausted every effort to do so without success. They answer further, that anterior to the fil-

ing of the bill proceedings to acquire title to so much of said land as is occupied by said railroad had been instituted, and that commissioners had been appointed under the statute to "appraise the compensation to be made to complainant, and that complainant, P. Moody, had actual knowledge and notice of these proceedings." They say further, that since the filing of the bill plaintiffs have been served with notice, by the commissioners, of the place at which they would meet to consider the amount of compensation to which plaintiffs are entitled, and allege that the company is the owner of a franchise of great value, of about twelve miles of graded track in Duval county, and some iron, quantity not stated, soon to arrive to. iron the same. They say further, that before the bill was filed they offered the complainants a good and sufficient bond as security to them for the payment of the compensation which may be awarded for the lands appropriated, to be determined by the commission. Defendants claim the right "to proceed with the construction of their road either before or after the commencement of or pending such proceedings in the Circuit Court for assessing the compensation to complainant," but offer to give security. for the payment of such compensation as may be awarded in the event such shall be held to be necessary, and also to comply with such equitable requirements as the court may direct and close their answer by stating that there is no case made by the bill, and by claiming the same benefit of this fact as if they had demurred to the bill. There is an affidavit accompanying the answer which gives particulars of repeated attempts to adjust the matter with plaintiffs. It more than sustains the answer.

Upon motion of defendants the court directed, "that the said injunction be dissolved upon the execution of a good and sufficient bond to be approved by this court, payable

to the said complainants, in the sum of three thousand dollars, upon the condition that the said Jacksonville, Tampa & Key West Railroad will pay unto the said complainants the compensation to which they may be entitled for the *taking and appropriating*" (italics by this court) " by the said company, of any of the lands of the complainants in their said bill, mentioned by the award of the commissioners appointed or to be appointed to consider, ascertain and fix the same under the provisions of the act of the Legislature of the State of Florida entitled [an] act to provide a general law for the incorporation of railroads and canals," approved February 19, 1874. A bond approved by the Judge and executed by parties other than the corporation, purporting to be in accordance with this order, was filed and both parties treating the injunction as dissolved the plaintiffs appealed to this court. This case must be considered first with reference to the order granting the injunction, and second in reference to the order allowing its dissolution upon the giving of the bond required. An examination of this case as we have stated it, shows that the claim here made by this corporation and the claim adjudicated by the court was not a right of entry for the purpose of survey or location of the line of contemplated road, and that while the injunctional order first granted and subsequently dissolved was against any further entry, the further entry contemplated was one for the purpose of construction of the road and its permanent use by the company, such as is contemplated by the 4th sub-division of the act of the Legislature controlling the subject. This case, therefore, does not involve a decision of the question whether such corporation has the right of entry upon and passage over the land of plaintiff for preliminary surveys and location of the line of its road, such as is authorized by sub-division first of section ten of the statute referred to. Between the entry for construc-

tion and use and the entry for location and survey the stat-
ute itself makes a distinction. For the first, it contem-
plates compensation. For the latter, none is provided ex-
cept such as is embraced in the final appraisement for the
taking.

The first general question here involved is whether this
corporation has the power to make a compulsory purchase
of the land of the citizen for the purpose of carrying out
the objects of its charter.

Under the power of eminent domain the sovereign may
make a compulsory purchase of the property of the citizen
when such property is to be appropriated to a public pur-
pose or use, but such compulsory purchase, or taking as it
is called, cannot be made even by the sovereign " without
just compensation." Such is the provision of our Constitu-
tion, which is a limitation upon all departments of the gov-
ernment. This, we understand, is not here denied ; but if
it were we should spend no time in hunting case of prece-
dent to sustain a principle so universally admitted.
Again, that which seeks to exercise this power here is a
railroad company, invested with the usual franchises to be
a corporation, to have the rights and duties of a common or
public carrier with authority to construct a line of railway
for the benefit of the public in affording additional facili-
ties of passenger travel and freight traffic. That this is a
public purpose and use for which the land of the citizen
may, to the extent it is necessary to accomplish such pub-
lic purpose be condemned, is also a legal proposition so
well established in this country that it is certainly unne-
cessary to do more than state that such is the law. This
leads us to the discussion of the true question in this case,
and that question, in the language of the corporation here,
is whether the act of the Legislature under which such
claim is here made assures to the owner of the private prop-

erty proposed to be taken the just compensation contemplated by the Constitution, as it is admitted that this corporation can be made the subject of the grant of a power to thus take the land, and that the proper department of the government to confer the power is the legislative department thereof.

Sections 14, 15, 16, 17 and 18, of chapter 1987, Laws, grant to the corporation the power to acquire titles to land required for its "purposes," as well as the manner of its exercise in a case of the character now before the court.   The company is required to file a petition praying for the appointment of commissioners of appraisal by the Circuit Court, describing the land sought to be acquired, and after prescribing various proceedings, among which is notice and right to hearing by the parties interested, the act provides (sec. 17) that "the report of the commissioners shall be recorded by the Clerk of the Court, in whose office the same is filed in the judgment book of said court, and at any time after filing the same the railroad or canal company may pay to such owner or owners of the lands so taken, or to the clerk of said court, for the use of said owner or owners, the amount awarded by said commissioners, and if necessary a writ of assistance shall be issued by the said Circuit Court to put such company in possession."   This is the compensatory clause for the taking authorized.   The act authorizes the company " to proceed with the construction and operation of the road, either before the commencement of or pending such proceedings in the Circuit Court, to obtain titles to the land along the line or route of its road, and there is no provision in the act authorizing the landowner to institute the proceeding.   Other provisions of the act regulating proceedings to acquire titles, under circumstances not existing in this case, and which do not apply to it, are called to our attention by the appellee, but as they

do not control this proceeding or upon their face, or according to their plain letter and intent, purport in any manner to affect the present case it is only necessary to mention their character. These sections prescribe a method of proceeding, where the company shall not have acquired title to land upon which " they have constructed their track," or if after attempt to acquire title, the title " attempted to be acquired is defective," or the title is in a trustee of an infant or idiot without power of sale.

From this recital of the provisions of the act it is seen that so far as the matter of making compensation to the owner is concerned, the statute requires nothing more than that " *the report of the commissioners shall be recorded by the Clerk of the Court in whose office the same is filed in the judgment book of said court.*" It is said that this amounts to a judgment of the court. We do not think that this is so. We think, looking to this statute as an entirety, that the Legislature, in directing the recording of this award in the judgment book, did not intend to make it a judgment any more than a' direction to record it in the deed or execution book would have manifested an intention to make it a deed or execution. Not only is this so, but 'the provision that the corporation may at any time after filing the award pay the sum awarded to the owner, seems to contemplate no process by which any judgment before the taking is consummated by absolute appropriation can be enforced at the instance of the land owner, and we think it clear from the terms of this section (17), and the provision in section 14, which provides that the corporation may proceed with the " construction and operation of its road," that is to a complete taking, even before the filing of the petition to ascertain the damage, that the Legislature contemplated here nothing except what it in words expressed; and acting upon the idea that the corporation would pay after the filing of

the report fixing its amount, it did nothing more than "fix any time" after such filing as the date upon which it might do so. Where is the authority in this statute or elsewhere for the clerk, after recording the report in the judgment book, all that the law directs, to follow such record with a *consideratum est per curiam* against the corporation as to the damages awarded ? It is true as contended by the corporation here that the 14th section of the act provides that from the time of filing the petition the proceedings shall be considered a suit pending in the Circuit Court of such county, and to the extent that such proceedings as prescribed can be given effect as judicial proceedings, we will do so. Such is our duty. But surely, if we go beyond this, if we add to the plain terms of the law and authorize other and additional proceedings, and those, too, of the most important character, do we not become to that extent legislators, and in effect add to and amend this statute ? Judicial legislation, to the extent that it exists anywhere, when clearly shown, is usurpation, and there is no more important organic limitation viewed in any respect than that which in unmistakable terms says, to judicial tribunals, you shall not exercise the functions of the legislative department of the government. The simple filing of a report of the commissioners, whether it be in one book or another, does not in any sense amount to more than *ascertaining* the amount of compensation or fixing the amount of the claim or debt. A taking of private property upon such simple finding of the amount of compensation due is clearly a "taking of private property without just compensation."

In view of the fact that our conclusion is the same, viewing this case in such aspect, and in view of the additional fact that this case has been argued in that light, we will, however, treat this filing of a report as equivalent to a judgment for the land owner.

The question then is, is a judgment against a corporation, with the right to have execution thereof, a just compensation to the land owner for the taking of his land for construction of the road of the corporation and its appropriation to its use?

Chancellor Kent's view seems to be that the indemnity should, in cases which would admit of it, be previously and equitably ascertained, and be ready for reception concurrently in point of time with the actual exercise of the right of eminent domain. 2 Kent's Commentaries, 339, note. Mr. Justice Cooley, in his work on Constitutional Limitations, (5 Ed., p. 697) says: " On general principles it is essential that an adequate fund be provided from which the owner of the property can certainly obtain compensation. It is not competent to deprive him of his property and turn him over to an action at law against a corporation which may or may not prove responsible and to a judgment of uncertain efficacy. For the consequence would be in some cases that the party might lose his estate without redress in violation of the inflexible maxim upon which the right is based."

In the case of Thompson vs. The Grand Gulf Railroad and Banking Company, (3 How., Miss., 249) one of the questions involved was whether a judgment was compensation within the meaning of the Constitution of that State. Chief-Justice Sharkey there says, " the judgment in this case is not compensation. A judgment is but a security for compensation, or satisfaction, which may or may not prove productive. In principle there is no difference between a judgment and a bond except that one is a security of a higher nature than the other. Suppose the Legislature had said that the railroad company should give bond for the payment of the damages assessed, could it be said to be a compensation? And yet it might be quite

available as a judgment." It is true that the Constitution of Mississippi, in force at the time this opinion was rendered, differed with ours in that it required that compensation should be "*first*" made, but it is plain that this difference does not render inapplicable here this definition of compensation, as it is given without reference to the time at which it was to be made. What is said is that " the judgment is not compensation."

Could language more completely cover a case than this language of these two eminent jurists does the present controversy? If the statute is construed to establish a claim or debt and leave the party to his action, this clearly is insufficient, and if it gives a judgment the party might lose his estate without redress. It must be borne in mind, too, that the statute with this construction does not leave the question of solvency or insolvency of the corporation open for inquiry. It permits nothing of the kind. Under this construction any corporation, whether it be solvent or insolvent, whether all of its franchises and all of its property, owned at the time of taking the property of the citizen, and to be thereafter acquired, including the identical property taken, is or is not subject to a first mortgage equal to its full value, the citizen must accept the judgment against it as the just compensation of which the Constitution says no power in the government shall deprive him. We have no doubt at all that that portion of the statute which authorizes the taking of private property and which we have been considering is unconstitutional and void. Under these circumstances our duty is to enforce the Constitution, the common superior of Legislatures and judicial tribunals, and disregard the statute to the extent indicated. As to any other part of it we say nothing.

We leave this branch of this case with an allusion to a case to which our attention is especially called by the cor-

poration here.   The case is Bloodgood vs.  The Mohawk
and Hudson Railroad Company, 18 Wend., 17.   Chancellor
Walworth in this case, in his comments upon the exercise
of the power of eminent domain by the State or its agents,
addresses his remarks in one place to the exercise of the
right of eminent domain by the State or its agents for the
purpose of making public highways or for the use
of the State canals.   He there says that the " compen-
sation must be either ascertained and paid to him before
his property is thus appropriated, or an appropriate remedy
must be provided, and upon an adequate fund whereby he
may obtain such compensation through the medium of the
courts of justice if those whose duty it is to make such
compensation refuse to do so."   He then gives as an illus-
tration of his views the remedy in a case where the town,
county or State officers refuse to do their duty " in ascer-
taining, raising or paying such compensation in the mode
prescribed by law," which he says is " by mandamus to
compel them to perform their duty," holding that " the
public purse or the property of the town or county upon
which the assessment is to be made may justly be consid-
ered an adequate fund."   When, however, he comes to con-
sider the case before him, which was trespass *quare clausum
fregit*, the alleged trespass being a breaking down of plain-
tiff's fences, destroying his trees and digging up his soil
(which is the injury in this case) his response to a plea,
justifying under defendant's act of incorporation with-
out averring that the damages had been regularly assessed
and paid, or deposited in bank to the credit of the owner,
before entry and appropriation as required by the charter,
his language fully sustains the conclusions we have here
reached.   He says " the citizen whose property is thus
taken from him without his consent is not bound to trust
to the solvency of an individual or even of an incorporated

company, for corporations as well as individuals are sometimes unable to pay all their just debts, especially those corporations which are authorized to incur heavy responsibilities," (and the defendant here is one of that kind) " in anticipation of the payment of their capital by the subscribers for the stock, and if the true construction of this charter was such as is contended for by defendant's counsel," (which was that it authorized the acts complained of before payment for the land) " I should hold that the provision which authorized the appropriation of the plaintiff's property to the use of the corporation before the damages had been ascertained and paid was unconstitutional and void." This is what we have been constrained to do here. While the construction of this road is a matter of great importance to a large number of our people, our plain duty requires us to say, as Chancellor Walworth says he would have been constrained to say of a similar act, that the provision authorizing an appropriation of plaintiff's's property here is unconstitutional and void.

We think, therefore, that the granting of the injunction was proper. The only other questions existing in this case, as it was submitted, arise out of the order of the Chancellor dissolving the injunction upon the coming in of the answer of defendants. From the statement of the case it is seen that the court dissolved the injunction thus granted upon the execution of the bond approved by the court, the condition of the bond being that the corporation would pay to complainants the compensation to which they may be entitled for the *taking and appropriating by the said railroad company of any of the lands of complainants* to be thereafter ascertained under the statute. The result of this action is that a re-entry against the will of the owner and for the purpose of appropriation is authorized upon the giving of a bond of the character named. Could the plain-

tiffs recover in an action upon this bond? As a statutory obligation it is void. Could it be regarded as an obligation at common law? See Vilhac vs. S. & I. Railroad Co., 53 Cal., 212. The court thus in the absence of any act of the Legislature authorizing this company to exercise the right of eminent domain, in other words to take the property of plaintiff against his will, authorizes it to do so, and that too without just compensation, for as we have seen neither a bond nor a judgment of this kind answers this requirement of the Constitution in this particular. The rule that a court of equity having acquired jurisdiction for one purpose may exercise it to the doing of full equity between the parties, has no application here. This matter is controlled by principles much more elementary and important than those which concern the mere rules of remedial practice in equity. The right of compulsory purchase under the Constitution does not attach to all corporations organized for a public purpose any more than it does to individuals who propose to accomplish a like public purpose, and a court of equity independent of legislative grant to such corporation or individual can no more designate or authorize the corporation to exercise such power than it can an individual having no corporate powers of any character. It can no more grant here this right of compulsory purchase than it can the franchise to be a corporation. The designation of the corporation or individual to exercise the power, the granting of the right of compulsory purchase, and the requirement. to make and the method of making just compensation, are all legislative " functions," and in the absence of legislative action authorizing these acts the courts are powerless, either through the instrumentality of injunctions granted or dissolved or otherwise, to authorize the exercise of such powers. In proper cases the courts may and must construe the Constitution, and determine

where the right of the land owner is involved, whether such power has been conferred by the Legislature upon a corporation in a constitutional method, and to see that it is properly executed if such method is prescribed.   With that our power ceases, for if it is not thus given to the corporation we cannot give it, any more than the Legislature can enter a judgment in proceedings other than those embraced within its specially granted judicial powers, such as impeachment and trial of an officer of the government under certain circumstances.   This (the granting of the right of compulsory purchase) is clearly a purely legislative function, and the Constitution, Article III, provides that, " no person properly belonging to one of the departments " of government " shall exercise any functions appertaining to either of the others except in those cases expressly provided for by this Constitution."   In the absence of legislation granting the power the right of the land owner is precisely such as exists without any legislation on the subject, constitutional or otherwise, except perhaps in some matters of tort, and he may seek his remedy at law or in equity, as the nature and extent of his injuries require, and the remedial law and practice of the courts of common law and equity justify and authorize.   Surely a court of equity cannot say to the land owner you shall submit to a trespass; you shall part with your land whether you desire to 'do so or not, at a price which commissioners may value it at, and that too in a case instituted by the land owner praying protection from this very act of illegal appropriation.   The last order in this case, bearing date the second day of June, A. D. 1883, and all orders herein made are set aside, except the injunction granted upon the filing of the bill, and that will be revived to continue until the further order of the court, or until the corporation may be granted the right of compulsory purchase of the

land of the plaintiff by the proper authority, and just compensation is made to him therefor upon its legal condemnation to the use of the company.

The case is remanded for such proceedings as are consistent with the opinion herein rendered, and the principles of equity.