## CENTRAL STOCK YARDS COMPANY *v.* LOUISVILLE & NASHVILLE RAILWAY COMPANY.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE SIXTH CIRCUIT.

No. 149. Argued January 28, 29, 1904.—Decided February 23, 1904.

Neither the act of Congress of February 4, 1887, c. 104, 24 Stat. 379, nor section 213 or other provisions in the constitution of the State of Kentucky imposes an obligation upon a railroad having its own stockyards in Louisville under a lease from a stockyard company, to accept live stock from other states for delivery at the stockyards of another railroad in the same city and neighborhood, although there is a physical connection between the two roads.

THE facts are stated in the opinion.

*Mr. Joseph C. Dodd* and *Mr. Wm. D. Washburn,* with whom *Mr. J. L. Dodd* and *Mr. W. M. Smith* were on the brief, for appellant.

*Mr. Helm Bruce,* with whom *Mr. Charles N. Burch* and *Mr. Ed. Baxter* were on the brief, for appellees.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is an appeal from a decree of the Circuit Court of Appeals affirming a decree of the Circuit Court which dismissed the plaintiff's bill. 1 Fed. Rep. 113. The bill was brought by the appellant, a Delaware corporation, against a Kentucky corporation, to compel it to receive live stock tendered to it outside the State of Kentucky for the Central Stock Yards

station, and to deliver the same at a point of physical connection between its road and the Southern Railway, for ultimate delivery to or at the Central Stock Yards. The Central Stock Yards station is at the Central Stock Yards, just outside the boundary line of Louisville, Kentucky, on the Southern Railway Company's line, and by agreement between the two companies the Central Stock Yards are the "live stock depot for the purpose of handling live stock to and from Louisville" on the Southern Railway. The defendant, by a similar arrangement, has made the Bourbon Stock Yards its live stock depot for Louisville, and declines to receive live stock billed to the Central Stock Yards, or to deliver live stock destined to Louisville elsewhere than at the Bourbon yards. There are physical connections between the Louisville and Nashville and the Southern tracks at a point between the two stock yards, which is passed by the greater portion of the live stock carried by the Louisville and Nashville Company, and at another point which would be more convenient for delivery a little further to the northward. The details are unimportant, except that in order to deliver, as prayed, the defendant would be compelled either to build chutes or to hand over its cars to the Southern Railroad, after having made some contract for their return. The right is claimed by the plaintiff, under the Interstate Commerce Act of February 4, 1887, c. 104, § 3, 24 Stat. 379, making it unlawful for common carriers subject to the act to give unreasonable preferences, and requiring them to afford all reasonable, proper and equal facilities for the interchange of traffic between their respective lines, and for the receiving, forwarding and delivering of property to and from their several lines and those connecting therewith. The right is claimed also under the Constitution of Kentucky, especially § 213, requiring Kentucky railroad companies to receive, deliver, transfer and transport freight from and to any point where there is a physical connection between the tracks, as we understand it, of the railroad concerned and any other.

For the purposes of decision we assume, without expressing an opinion, that if the Act of Congress and the Kentucky Constitution apply to the case they both confer rights upon

the plaintiff. As to the former compare §§ 8, 9, and the act of February 19, 1903, c. 708, § 2, 32 Stat. 847, 848, *Covington Stock-Yards Co.* v. *Keith,* 139 U. S. 128; *Kentucky & Indiana Bridge Co.* v. *Louisville & Nashville R. R.,* 37 Fed. Rep. 567, 610, 620. The rights under the latter, which are relied upon especially, could not be established without discussion. Compare *Atkinson* v. *Newcastle &c. Waterworks Co.,* L. R. 2 Ex. Div. 441; *Johnston* v. *Consumers' Gas Company of Toronto,* [1898] A. C. 447. For the same purpose we further assume that such rights as the plaintiff has may be enforced by bill in equity. See *Interstate Stock-Yards Co.* v. *Indianapolis Union Railway,* 99 Fed. Rep. 472. We also lay on one side the question whether the section of the Constitution of Kentucky is or is not invalid as an attempt to regulate commerce among the States. For we are of opinion that the defendant's conduct is not within the prohibitions or requirements of either the Act of Congress or the Constitution of Kentucky, as those provisions fairly should be construed.

The Bourbon Stock Yards are the defendant's depot. They are its depot none the less that they are so by contract and not so by virtue of a title in fee. Unless a preference of its own depot to that of another road is forbidden, the defendant is not within the Act of Congress. Suppose that the Southern Railway station and the Louisville and Nashville station were side by side, and that their tracks were connected within or just outside the limits of the station grounds. It could not be said that the defendant was giving an undue or unreasonable preference to itself or subjecting its neighbor to an undue or unreasonable disadvantage if it insisted on delivering live stock which it had carried to the end of the transit at its own yard. These views are sanctioned by what was said in *Covington Stock-Yards Co.* v. *Keith,* 139 U. S. 128. The fact that the plaintiff's stock yards are public does not change the case. See further *Butchers' & Drovers' Stock-Yards Co.* v. *Louisville & Nashville R. R.,* 67 Fed. Rep. 35.

If the cattle are to be unloaded, then, as was said in *Covington Stock-Yards Company* v. *Keith,* the defendant has a right to unload them where its appliances for unloading are, and

cannot be required to establish another set hard by. On the other hand, if the cattle are to remain in the defendant's cars it cannot be required to hand those cars over to another railroad without a contract, and the courts have no authority to dictate a contract to the defendant or to require it to make one. *Atchison, Topeka & Santa Fé R. R.* v. *Denver & New Orleans R. R.*, 110 U. S. 667, 680. The consensus of the Circuit Courts is to the same effect. *Kentucky and Indiana Bridge Co.* v. *Louisville & Nashville R. R.*, 37 Fed. Rep. 567, 629, 630; *Little Rock & Memphis R. R.* v. *St. Louis, Iron Mountain & Southern Ry.*, 41 Fed. Rep. 559; *Chicago & Northwestern Ry.* v. *Osborne*, 52 Fed. Rep. 912; *Oregon Short-line & Utah Northern Ry.* v. *Northern Pacific R. R.*, 61 Fed. Rep. 158, affirming *S. C.*, 51 Fed. Rep. 465; *Little Rock & Memphis R. R.* v. *St. Louis Southwestern Ry.*, 63 Fed. Rep. 775; *St. Louis Drayage Co.* v. *Louisville & Nashville R. R.*, 65 Fed. Rep. 39; *Allen* v. *Oregon R. R. & Navigation Co.*, 98 Fed. Rep. 16. All that was decided in *Wisconsin, Minnesota & Pacific R. R.* v. *Jacobson*, 179 U. S. 287, was that by statute two railroad companies might be required to make track connections. So much of the statute as undertook to regulate rates was not passed upon. See *Minneapolis & St. Louis R. R.* v. *Minnesota*, 186 U. S. 257, 263. There is no act of Congress that attempts to give courts the power to require contracts to be made in a case like this.

What we have said applies, in our opinion, to the Constitution of Kentucky with little additional argument. The requirement to deliver, transfer and transport freight to any point where there is a physical connection between the tracks of the railroad companies, must be taken to refer to cases where the freight is destined to some further point by transportation over a connecting line. It cannot be intended to sanction the snatching of the freight from the transporting company at the moment and for the purpose of delivery. It seems to us that this would be so unreasonable an interpretation of the section that we do not find it necessary to consider whether under any interpretation it can be sustained. In view of the course taken by the argument we may add that we do

not find a requirement that the railroad company shall deliver its own cars to another road. The earlier part of section 213 provides that all railroads " shall receive, transfer, deliver and switch empty or loaded cars, and shall move, transport, receive, load or unload all the freight in carloads or less quantities, coming to or going from any railroad, . . . with equal promptness and dispatch, and without any discrimination. . . ." Promptness and the absence of discrimination are the point, and that shows that the words " coming to or going from any railroad," qualify the words " empty or loaded cars," as well as " freight," and therefore that the cars referred to are cars from other roads. The same thing is shown by the word " receive," which is the starting point of all that relates to cars. See *Louisville & Nashville R. R.* v. *Commonwealth*, 108 Kentucky, 628, 633. The other sections of the Constitution need no special remark.

We have discussed the case as if the two stock yards were side by side. They were not, but they both were points of delivery for cattle having Louisville as their general destination. They both were Louisville stations in effect. It may be that a case could be imagined in which carriage to another station in the same city by another road fairly might be regarded as *bona fide* further transportation over a connecting road and within the requirements of the Kentucky Constitution. However that may be, we are of opinion that the court below was entirely right, so far as appears, in treating this as an ordinary case of stations at substantially the same point of delivery, and, therefore, as one to be dealt with as if they were side by side. As the defendant would not be bound to deliver at the Central Stock Yards if they were by the side of its track, its obligation is no greater because of the intervention of a short piece of the track of another railroad. As we have said, the delivery would have to be made either by unloading or by the surrender of the defendants' cars.

*Decree affirmed.*

Mr. Justice McKenna concurs in the result.