## LOUISVILLE AND NASHVILLE RAILROAD COMPANY *v.* CENTRAL STOCK YARDS COMPANY.

ERROR TO THE COURT OF APPEALS OF THE STATE OF KENTUCKY.

No. 51. Argued December 10, 11, 1908.—Decided January 25, 1909.

A provision in the constitution of a State that a carrier must deliver its
cars to connecting carriers without providing adequate protection for
their return, or compensation for their use, amounts to a taking of
property without due process of law within the meaning of the Four-

teenth Amendment; and so held as to §§ 213, 214 of the constitution of Kentucky.

The law must save the rights of parties and not leave them to the discretion of the courts as such.

Where a general provision in the constitution of a State is void as taking property without due process or compensation, and compensation has not been provided by statute, the defect cannot be cured by the courts inserting provisions for compensation in judgments under such constitutional provision.

The duty of a carrier to accept goods tendered at its station does not require it to accept cars offered by competing roads at arbitrary points near its terminus for the purpose of using its terminal station. A law requiring the carrier so to do is unconstitutional as taking property without due process of law.

97 S. W. Rep. 778, reversed.

THE facts are stated in the opinion.

*Mr. Helm Bruce,* with whom *Mr. Henry L. Stone, Mr. James P. Helm* and *Mr. Kennedy Helm* were on the brief, for plaintiff in error:

So far as concerns interstate shipments of live stock, the whole matter is concluded by the judgment of the Federal court in the former litigation in *Central Stock Yards Co.* v. *Louisville & Nashville R. R. Co.,* 192 U. S. 568, and that judgment is a bar to the relief sought in this case as to such interstate shipments. *Dupasseur* v. *Rocherau,* 21 Wall. 130; *Embry* v. *Palmer,* 107 U. S. 3; *Crescent City Live Stock Co.* v. *Butchers' Union Slaughter House Co.,* 120 U. S. 141; *Deposit Bank* v. *Frankfort,* 191 U. S. 499; *Cromwell* v. *Sac County,* 94 U. S. 353; *Smith* v. *Auld,* 31 Kansas, 262.

Sec. 213, Kentucky constitution, as construed by the highest state court, in so far as it attempts to control interstate shipments, is void as attempting to regulate interstate commerce. *Central Stock Yards Co.* v. *Louisville & Nashville R. R. Co.,* 118 Fed. Rep. 120, and cases there cited; *McNeil* v. *Southern Ry.,* 202 U. S. 543; *Central of Georgia* v. *Murphy,* 196 U. S. 194; *Houston &c. Ry. Co.* v. *Mayes,* 201 U. S. 321.

Sec. 213, as so construed, in requiring plaintiff in error to

deliver up possession of its cars to another railroad company, deprives the former of its property without due process of law. McGehee on Due Process of Law, 291; *Mo. Pac. Ry. Co.* v. *Nebraska,* 164 U. S. 403; *Minnesota* v. *Chicago &c. R. Co.,* 36 Minnesota, 402; *Chicago, Burlington &c. Ry. Co.* v. *Chicago,* 166 U. S. 266; *Lankford* v. *County of Ramsay,* 16 Minnesota, 373, 375. The following cases, cited in opinion of court below, discussed and distinguished: *Peoria &c. Ry. Co.* v. *Chicago, R. I. & P. Ry. Co.,* 109 Illinois, 135; *S. C.,* 50 Am. Rep. 605; *Burlington &c. Ry. Co.* v. *Dey,* 82 Iowa, 312; *S. C.,* 12 L. R. A. 436; *S. C.,* 31 Am. St. Rep. 477; *Jacobson* v. *Wisconsin Ry. Co.,* 71 Minnesota, 519; *S. C.,* 70 Am. Rep. 358.

Sec. 213, as so construed, in requiring plaintiff in error to devote its terminals in Louisville to the use of other railroads and to mere local transfers not connected with the traffic of plaintiff in error, deprives it of its property without due process of law. *Atlantic Coast Line Ry. Co.* v. *North Carolina Corporation Commission,* 206 U. S. 1; *Wisconsin &c. R. R. Co.* v. *Jacobson,* 179 U. S. 287; *Martin* v. *District of Columbia,* 205 U. S. 135.

*Mr. Joseph C. Dodd,* with whom *Mr. John L. Dodd* was on the brief, for defendant in error:

The provisions of §§ 213, 214, Kentucky constitution, and §§ 818, 819, Kentucky General Statutes, as construed by the highest court of that State, do not deny the plaintiff in error any Federal right or privilege. *L. & N. R. R. Co.* v. *Central Stock Yards Co.,* 30 Ky. Law Rep. 18, 39; *Lake Shore &c. R. R. Co.* v. *Smith,* 173 U. S. 697; *Minn. & St. L. Ry. Co.* v. *Minn. R. R. & Warehouse Co.,* 186 U. S. 261; *Penn. R. R. Co.* v. *Miller,* 132 U. S. 75; *Louisville Water Co.* v. *Clark,* 143 U. S. 1; *L. & N. R. R. Co.* v. *Kentucky,* 161 U. S. 677; *S. C.,* 183 U. S. 513; *M., K. & T. Ry. Co.* v. *Hughes,* 169 U. S. 613; *Penn. R. R. Co.* v. *Hughes,* 191 U. S. 489; *Houston & Tex. Cent. R. R. Co.* v. *Mayes,* 201 U. S. 321; *Chicago, Milwaukee &c. Ry. Co.* v. *Solan,* 169 U. S. 137, 138; *Chicago, M. & St. P. Ry. Co.* v.

*Becker,* 32 Fed. Rep. 849; *Iowa* v. *Chicago, M. & St. P. Ry. Co.,* 33 Fed. Rep. 391, 395; Charter of Louisville Railway Transfer Company, Appendix, Part III, see § 5.

There is also a contract between the city of Louisville, the Louisville Railway Transfer Co. and the plaintiff in error. *Sherlock* v. *Alling,* 92 U. S. 99; *Nashville, C. & St. L. R. R. Co.* v. *Alabama,* 128 U. S. 96; *Hennington* v. *Georgia,* 163 U. S. 299; *N. Y., N. H. & H. Ry. Co.* v. *New York,* 165 U. S. 628.

The police power of the State cannot be bargained away or contracted against and when, within such power, a duty of a common carrier is required by constitutional or statutory provision the question of inconvenience or expense is immaterial. 4 Debates of Kentucky Const. Convention, 5118–5162; *Butchers' & Drovers' Stock Yards Co.* v. *L. & N. R. R. Co.,* 67 Fed. Rep. 36; *Covington Stock Yards Co.* v. *Keith,* 139 U. S. 128; *L. & N. R. R. Co.* v. *Kentucky,* 108 Kentucky, 628; *S. C.,* 26 Ky. Law Rep. 597; *L. & N. R. R. Co.* v. *Pittsburgh & Kanawha Coal Co.,* 111 Kentucky, 960; *S. C.,* 23 Ky. Law Rep. 1318; *L. & N. R. R. Co.* v. *Williams,* 95 Kentucky, 199; *S. C.,* 15 Ky. Law Rep. 548; *Burlington, C. R. & N. R. R. Co.* v. *Dey,* 82 Iowa, 336; *Peoria & P. N. Ry. Co.* v. *Chicago, R. I. & P. Ry. Co.,* 109 Illinois, 139; *Jacobson* v. *Wisconsin, Minn. & P. R. R. Co.,* 71 Minnesota, 532; *Michigan C. R. R. Co.* v. *Smithson,* 45 Michigan, 221; *McCoy* v. *C., I., St. L. & C. R. R. Co.,* 13 Fed. Rep. 3; *Coe* v. *L. & N. R. R. Co.,* 3 Fed. Rep. 778; *Interstate Stock Yards Co.* v. *Railroad Companies,* 99 Fed. Rep. 472; *L., E. & St. L. Consolidated Ry. Co.* v. *Wilson,* 18 L. R. A. 105; *Railroad Company* v. *Goodridge,* 149 U. S. 680; *Inman* v. *St. L. S. W. Railway Co.,* 37 S. W. Rep. 37; *T. & S. F. R. R. Co.* v. *Denver & N. O. R. R. Co.,* 110 U. S. 667; *State* v. *Wabash, St. L. & P. R. Co.,* 83 Missouri, 144; *Mo. Pac. Railway Co.* v. *Wichita Grocery Co.,* 40 Pac. Rep. 899; *S. C.,* 2 Elliott on Railroads, §§ 1432, 1440; *Penna. R. R. Co.* v. *Jones,* 155 U. S. 333; *Daner* v. *N. Y. &c. R. R. Co.,* 50 How. 428; *Little Miami R. R. Co.* v. *Washburn,* 22 Ohio, 330; *Parker* v. *C. S. B. Q. R. R. Co.,* 56 Connecticut, 137; *Bosworth* v. *Chicago Ry. Co.,* 37

Fed. Rep. 72; *Railroad Co.* v. *Manufacturing Co.*, 16 Wall. 318; *Vincent* v. *C. & A. R. R. Co.*, 49 Illinois, 41; *Coe* v. *L. & N. R. R. Co.*, 3 Fed. Rep. 778; *In re Patterson*, 3 Fed. Rep. 89; *North* v. *Transportation Co.*, 146 Massachusetts, 315; *M. S. & I. R. R. Co.* v. *Day*, 20 Illinois, 375; *Beers* v. *Wabash, St. L. & P. R. R. Co.*, 34 Fed. Rep. 244; *L. & N. R. R. Co.* v. *Odell*, 33 S. W. Rep. 611; *Seasongood &c. Co.* v. *Tenn. & Ohio Transp. Co.*, 21 Ky. Law Rep. 1144; *McNeill* v. *Southern Ry. Co.*, 202 U. S. 445; *Atlantic Coast Line R. R. Co.* v. *North Carolina Corp. Com.*, 206 U. S. 1.

Sec. 4 of the contract of plaintiff in error with the Bourbon Stock Yards to deliver to it all live stock brought over plaintiff in error's lines to Louisville, is in contravention of the laws of Kentucky, against public policy and void, and in no event relieves plaintiff in error of the duty imposed by law to receive, switch, and deliver such stock, destined to the Central Stock Yards, to connecting carriers for delivery at said Central Stock Yards. *L. & N. R. R. Co.* v. *Central Stock Yards Co.*, 30 Ky. Law Rep. 18, 39; *Bedford-Bowling Green Stone Co. &c.* v. *Oman &c.*, 115 Kentucky, 369; *S. C.*, 24 Ky. Law Rep. 2274; *L. & N R. R. Co.* v. *Pittsburgh & Kanawha Coal Co.*, 111 Kentucky, 960; *McCoy* v. *C. & I., St. L. C. R. R. Co.*, 13 Fed. Rep. 5; *Munn* v. *Illinois*, 94 U. S. 139; *Commonwealth* v. *L. & N. R. R. Co.*, 27 Ky. Law Rep. 497; *Anderson* v. *Jett*, 89 Kentucky, 375; *S. C.*, 11 Ky. Law Rep. 570; *Peoria & R. I. R. R. Co.* v. *C. V. M. Co.*, 68 Illinois, 489; *Inter Ocean Co.* v. *Associated Press*, 184 Illinois, 448; *Chicago & N. M. Ry. Co.* v. *People*, 56 Illinois, 365; *Sanford* v. *Railroad Co.*, 24 Pa. St. 382; *State* v. *Hartford & N. H. Ry. Co.*, 29 Connecticut, 538; *Coe* v. *L. & N. R. R. Co.*, 3 Fed. Rep. 778.

The shipper and owner of property, even after the delivery thereof to a common carrier, and after the bill of lading has been signed and delivered, or after the goods have passed from the possession of the initial carrier into that of a succeeding one, may either stop the same in transit or change the destination thereof. Hutchinson on Common Carriers (2d ed.),

§§ 134, 337; *Sutherland* v. *Second National. Bank of Peoria,* 78 Kentucky, 250; *L. & N. R. R. Co.* v. *Hartwell,* 99 Kentucky, 436; *Strahorn* v. *Union Stock Yards & Transfer Co.,* 43 Illinois, 424; Benjamin on Sales, § 830; Smith's Mercantile Law, Pomeroy's ed., § 634; *Michigan Southern & Northern Ind. Ry. Co.* v. *Day,* 20 Illinois, 375; *Lewis* v. *Galena & Chicago U. R. R. Co.,* 40 Illinois, 281; *London & N. W. Ry. Co.* v. *Bartles,* 7 Hurlston & Norman Reps. 400; *Scothorn* v. *Railway Co.,* 8 Exch. Rep. 345; *L. & N. R. R. Co.* v. *Kentucky,* 183 U. S. 513; *L. & N. R. R. Co.* v. *Williams,* 95 Kentucky, 199; *Minn. & St. Louis Ry. Co.* v. *Minn. R. & W. Co.,* 186 U. S. 261; *Munn* v. *Illinois,* 94 U. S. 113; *Davidson* v. *New Orleans,* 96 U. S. 97; *Railroad Commission Cases,* 116 U. S. 307; *Mobile County* v. *Kimball,* 102 U. S. 691; *Gibbons* v. *Ogden,* 9 Wheat. 1; *Cooley* v. *Board of Wardens of Port of Philadelphia,* 12 How. 299; *Lake Shore & N. S. R. Co.* v. *Ohio,* 173 U. S. 285; *Hennington* v. *Georgia,* 163 U. S. 299; *Livingston & Fulton* v. *Van Ingen,* 9 Johns. 507; *Western Union Telegraph Co.* v. *Texas,* 105 U. S. 460; *Robbins* v. *Shelby Tax District,* 120 U. S. 489; *Hopkins* v. *United States,* 171 U. S. 578; *N. Y., N. H. & H. R. R. Co.* v. *New York,* 165 U. S. 628; *N. Y., L. E. & W. Ry. Co.* v. *Pennsylvania,* 158 U. S. 431; *L. & N. R. R. Co.* v. *Kentucky,* 161 U. S. 677; *S. C.,* 183 U. S. 503; *Henderson Bridge Co.* v. *Kentucky,* 166 U. S. 150; *S. C.,* 183 U. S. 517; *Penna. R. R. Co.* v. *Miller,* 132 U. S. 75; *Louisville Water Co.* v. *Clark,* 143 U. S. 1; *Jones* v. *Brim,* 165 U. S. 180; *Sherlock* v. *Alling,* 93 U. S. 99; *Morgan's L. & T. R. & S. S. Co.* v. *Louisiana State Board of Health,* 118 U. S. 455; *Smith* v. *Alabama,* 124 U. S. 465; *Nashville, C. & St. L. R. Co.* v. *Alabama,* 128 U. S. 96; *Mo., K. & T. Ry. Co.* v. *Haber,* 169 U. S. 613.

The decisions in the cases of *Central Stock Yards Co.* v. *Louisville and Nashville R. R. Co.,* 192 U. S. 568; *S. C.,* 118 Fed. Rep. 113, are not conclusive of the rights of the parties hereto. *Smith* v. *Auld,* 31 Kansas, 262; Black on Judgments (2d ed.), § 733; *Cromwell* v. *Sac County,* 94 U. S. 351; *Fairfield* v. *Gallatin County,* 100 U. S. 47; *Polk's Lessee* v. *Wendess,* 9

Cranch, 87; *Nesmith* v. *Sheldon*, 7 How. 812; *Walker* v. *State Harbor Commission*, 17 Wall. 648; *Elmdorf* v. *Taylor*, 10 Wheat. 152; *Green* v. *Neal's Lessee*, 6 Pet. 291; *Leffingwell* v. *Warren*, 2 Black, 599; *Sumner* v. *Hicks*, 2 Black, 532; *Olcott* v. *The Supervisors*, 16 Wall. 678; *State Railroad Tax Cases*, 92 U. S. 575; *Rowan &c.* v. *Runnels*, 5 How. 134; *Suydam* v. *Williamson*, 24 How. 427; *In re Duncan*, 139 U. S. 499; *Leeper* v. *Texas*, 139 U. S. 462; *Bucher* v. *Railroad Co.*, 125 U. S. 555; *Louisville &c. Ry. Co.* v. *Mississippi*, 133 U. S. 587; *Beauregard* v. *New Orleans*, 18 How. 499; *Western Union Tel. Co.* v. *James*, 162 U. S. 650; *Wisconsin &c. Ry. Co.* v. *Jacobson*, 179 U. S. 287; *Lake Shore &c. Ry. Co.* v. *Ohio*, 173 U. S. 285; *Smith* v. *Alabama*, 124 U..S. 465; *Sherlock* v. *Alling*, 93 U. S. 99; *Minneapolis &c. Ry. Co.* v. *Minn. R. R. & W. Co.*, 186 U. S. 257; *Chicago &c. R. R. Co.* v. *Solan*, 169 U. S. 133.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a proceeding in equity prosecuted in the courts of Kentucky, similar in the main to one in the United States courts between the same parties, that was decided by the Circuit Court of Appeals in 118 Fed. Rep. 113, and by this court in 192 U. S. 568. The latter was brought by the Central Stock Yards Company, a Delaware corporation, against the Railroad Company, a Kentucky corporation, to compel it to receive live stock tendered to it outside the State of Kentucky for the Central Stock Yards station, and to deliver the same at a point of physical connection between its road and the Southern Railway, for ultimate delivery to or at the Central Stock Yards. The Central Stock Yards station is at the Central Stock Yards, just outside the boundary line of Louisville, Kentucky, on the Southern Railway Company's line, and by agreement between the two companies the Central Stock Yards were the live stock depot for the purpose of handling live stock to and from Louisville on the Southern Railway. The Louisville and Nashville Railroad, by a similar arrangement, had made the Bourbon Stock Yards its

live stock depot for Louisville, and declined to receive live stock billed to the Central Stock Yards, or to deliver live stock destined to Louisville elsewhere than at the Bourbon Yards. There were physical connections between the Louisville and Nashville and the Southern tracks at a point between the two stock yards which was passed by the greater portion of the live stock carried by the Louisville and Nashville Company, and at another point that would be more convenient for delivery, a little further to the northward. In order to deliver as prayed the Louisville and Nashville would have been compelled either to build chutes or to hand over its cars to the Southern Railway. The right was claimed under the Interstate Commerce Act of February 4, 1887, c. 104, § 3, 24 Stat. 379, and the constitution of Kentucky, especially § 213, p. 147, Ky. Stats. Carroll, 1903. The Circuit Court of Appeals and this court agreed that the right was not conferred by the former act. As to the constitution of Kentucky, the Circuit Court of Appeals held that if it could be given any such construction as to make it purport to give the plaintiff a right to the relief sought, it would be making a void attempt to regulate interstate commerce. This court, on the general principle that a construction was to be adopted, if possible, that would save the instrument from constitutional objections, followed the suggestion of the Circuit Court of Appeals, read the section as not requiring the railroad to deliver its own cars, and affirmed a decree dismissing the bill.

The material sections of the constitution of Kentucky are as follows:

"Sec. 213. All railroad, transfer, belt lines and railway bridge companies, organized under the laws of Kentucky, or operating, maintaining or controlling any railroad, transfer, belt lines or bridges, or doing a railway business in this State, shall receive, transfer, deliver and switch empty or loaded cars, and shall move, transport, receive, load or unload all the freight in car loads or less quantities, coming to or going from any railroad, transfer, belt line, bridge or siding thereon, with equal promptness and despatch, and without any discrimination as to

charges, preference, drawback or rebate in favor of any person, corporation, consignee or consignor, in any matter as to payment, transportation, handling or delivery; and shall so receive, deliver, transfer and transport all freight as above set forth, from and to any point where there is a physical connection between the tracks of said companies. But this section shall not be construed as requiring any such common carrier to allow the use of its tracks for the trains of another engaged in like business.

"SEC. 214. No railway, transfer, belt line or railway bridge company shall make any exclusive or preferential contract or arrangement with any individual, association or corporation, for the receipt, transfer, delivery, transportation, handling, care or custody of any freight, or for the conduct of any business as a common carrier."

The present case was begun by the defendant in error earlier than the one just stated, and sought similar relief without regard to the place where the stock was received. A preliminary injunction was issued, and soon led to proceedings for contempt on the charge that it had been disobeyed. The court of first instance held that the injunction applied to an interstate shipment when the owner had sought to bill it to the Southern Railway at Louisville for delivery to the Central Stock Yards and had been refused, and thereafter, at the break-up yards, so called, of the Louisville and Nashville road, by giving notice to change the destination, had attempted to bring about the desired result. This decision was reversed by the Court of Appeals, *Louisville & Nashville R. R. Co.* v. *Miller*, 112 Kentucky, 464, and thereupon the beforementioned bill in the United States court was brought, to deal with interstate shipments, with a prayer, also, that the railroad be required to recognize changes of destination; while the present proceeding was kept on foot to cover all that it lawfully might. At a later date the petition, as it is called, in this case, was amended so as to pray that the plaintiff in error might be required, upon tender by the Southern Railway, to receive, at a point of physical connection

with the Southern Railway, live stock from the Central Stock Yards, and to deliver the same to the consignee at the Bourbon Stock Yards or any depot on its line.

After the decision in the other case the Railroad Company asked leave to plead the decree as a bar to so much of the relief in the present action as relates to stock shipped or desired to be shipped from points outside of Kentucky to points within Kentucky. The trial court, being of opinion that the decree would not be a bar, refused leave, but ordered the proposed amendment to be made part of the record for the purpose of appeal. After final hearing a judgment was entered for the plaintiff, the defendant in error, granting all the prayers of the bill. The Railroad Company was ordered (1) to receive at its stations in Kentucky, and "to bill, transport, transfer, switch and deliver in the customary way," at some point of physical connection with the tracks of the Southern Railway, and particularly at one described, all live stock or other freight consigned to the Central Stock Yards or to persons doing business there. (2) It was ordered further, to transfer, switch and deliver to the Southern Railway at the said point of connection, "any and all live stock or other freight coming over its lines in Kentucky consigned" to the Central Stock Yards or persons doing business there. (3) It was ordered further, to receive at the same point and to "transfer, switch, transport and deliver all live stock" consigned to any one at the Bourbon Stock Yards, "the shipment of which originates at the Central Stock Yards;" with proviso requiring pay or tender of proper charges for its services, whenever demanded, at the time such live stock or other freight is offered. (4) Finally the Railroad Company was required, whenever requested by the consignor, consignee, or owner of the stock, "at any of the stations, and particularly at its break-up yards in South Louisville, Kentucky," to recognize their right to change the destination, and upon payment of the full Louisville freight rate and proper presentation of the bill of lading duly indorsed, the railroad was required to change the destination and deliver at a point of connection with the Southern Railway tracks for

delivery by the latter to the Central Stock Yards. This judgment was affirmed by the Court of Appeals, whereupon this writ of error was brought. The points relied upon are that due credit was denied to the decree by the United States court; that if the constitution of Kentucky purports to authorize the requirement in the judgment as to delivery of shipments from outside the State, it attempts to regulate commerce among the States; that if the same instrument authorizes the requirement in the judgment that the Railroad Company should give up possession of its cars to the Southern Railway Company it attempts to deprive the railroad of its property without due process of law; and that the same constitutional objection applies to the attempt to make the railroad do switching work over its terminal property in Louisville between two points in the city when the shipment was neither coming into the city nor going out of the city over the lines of the plaintiff in error's road.

The Court of Appeals found itself unable to pass over the bridge laid by this court in its construction of the state constitution, § 213. It held that that section did purport to require the plaintiff in error to deliver its own cars, under the circumstances of the case, to the extent of the judgment that it affirmed. It declined to follow the decision of this court that for the purposes of the case before it, the two stock yards stood on the same footing as if they were the stations of two railroads placed side by side. It decided that the state constitution as construed by it did not attempt to regulate commerce among the States, and, no doubt for that reason, disregarded the former decree between the same parties, thinking, we presume, that, as the former bill dealt only with interstate commerce, the decree could have no binding effect as against a judgment which it deemed to affect only matters within the control of the State.

We are surprised that the Court of Appeals should have decided that the judgment appealed from did not deal with commerce among the States. The portion that we have numbered (2) ordered a delivery to the Southern Railway of all live stock and freight coming over its lines consigned to the Central Stock

Yards, and this includes, of course, that coming from other States. The same is to be said of the requirement in (4) as to change of destination. When the live stock reached the point of connection or the break-up yards the carriage was not at an end, as appears by the very intent of the judgment, and as was decided in *McNeill* v. *Southern Ry. Co.*, 202 U. S. 543, 559. Moreover, that decision cited and approved the language of the Circuit Court of Appeals, to which we have referred already, in the case between these parties, to the effect that if the Kentucky constitution could be construed as the state Court of Appeals has construed it, it would be attempting what it could not do. *Ibid.*, 562. We think discussion of this part of the case unnecessary, and we should have to hold the provision of the state constitution void as applied, if we followed the construction given to it by the state court; but we are relieved of that necessity by the fact that those portions of the judgment of which we are speaking are invalid by reason of the previous adjudication of the United States court.

As we have indicated, the decree was pleaded as a bar only "to so much of the claim for relief as relates to stock shipped or transported, or desired to be shipped or transported from points outside of Kentucky to points within Kentucky." It was not argued that a decision that certain words in a constitution have a certain meaning, in a suit founded upon them, is conclusive as between the same parties in another suit upon the same words, for the same purpose, except that one is to enforce them with regard to matters outside the control of the State, and the other to enforce them with regard to matters within its control. Therefore we express no opinion upon the point. It was argued, however, that the requirement that the plaintiff in error should deliver its own cars to another road was void under the Fourteenth Amendment as an unlawful taking of its property. In view of the well known and necessary practice of connecting roads, we are far from saying that a valid law could not be passed to prevent the cost and loss of time entailed by needless transshipment or breaking bulk, in case

of an unreasonable refusal by a carrier to interchange cars with another for through traffic. We do not pass upon the question. It is enough to observe that such a law perhaps ought to be so limited as to respect the paramount needs of the carrier concerned, and at least could be sustained only with full and adequate regulations for his protection from the loss or undue detention of cars, and for securing due compensation for their use. The constitution of Kentucky is simply a universal undiscriminating requirement, with no adequate provisions such as we have described. The want cannot be cured by inserting them in judgments under it. The law itself must save the parties' rights, and not leave them to the discretion of the courts as such. See *Security Trust & Safety Vault Co.* v. *Lexington,* 203 U. S. 323, 333; *Roller* v. *Holly,* 176 U. S. 398, 409; *Connecticut River R. R. Co.* v. *County Commissioners,* 127 Massachusetts, 50, 57; *Ash* v. *Cummings,* 50 N. H. 591; *Moody* v. *Jacksonville, Tampa & Key West R. R. Co.,* 20 Florida, 597; *Ex parte Martin,* 13 Arkansas, 198; *St. Louis* v. *Hill,* 116 Missouri, 527. It follows that the requirement of the state constitution cannot stand alone under the Fourteenth Amendment, and that the judgment in this respect also, being based upon it, must fall. We do not mean, however, that the silence of the constitution might not be remedied by an act of legislature or a regulation by a duly authorized subordinate body if such legislation should be held consistent with the state constitution by the state court. We should add that the requirement in the first part of the judgment, which we have been discussing, is open to the objections mentioned in the former decision so far as it practically requires the Louisville and Nashville Railroad to deliver cars at Louisville elsewhere than at its own terminus. 192 U. S. 570, 571.

There remains for consideration only the third division of the judgment, which requires the plaintiff in error to receive at the connecting point, and to switch, transport and deliver all live stock consigned from the Central Stock Yards to any one at the Bourbon Stock Yards. This also is based upon the sec-

tions of the constitution that have been quoted. If the principle is sound, every road into Louisville, by making a physical connection with the Louisville and Nashville, can get the use of its costly terminals and make it do the switching necessary to that end, upon simply paying for the service of carriage. The duty of a carrier to accept goods tendered at its station does not extend to the acceptance of cars offered to it at an arbitrary point near its terminus by a competing road, for the purpose of reaching and using its terminal station. To require such an acceptance from a railroad is to take its property in a very effective sense, and cannot be justified, unless the railroad holds that property subject to greater liabilities than those incident to its calling alone. The Court of Appeals did not put its decision upon any supposed special liability, but upon the broad ground that the state constitution requires it and lawfully may require it of a common carrier by rail. Therefore the judgment must be reversed.

*Judgment reversed.*

Mr. Justice McKenna, dissenting.

I am unable to concur in the opinion of the court so far as it applies to the transportation of cattle wholly within Kentucky. The difference between that and interstate transportation is important, for it was conceded at the argument that at least sixty per cent of the business was of domestic cattle.

This is a second review of the controversy between the parties. It was originally started in one of the courts of Kentucky, and there, meeting obstacles arising from the want of jurisdiction over interstate commerce, the latter was made the subject of a suit in a United States Circuit Court, where the Central Stock Yards Company suffered defeat; its bill being dismissed for want of equity. This judgment was affirmed by the Circuit Court of Appeals (118 Fed. Rep. 113), and subsequently by this court. 192 U. S. 568. This is pointed out in the opinion, but it may be well to see what was decided. In the Circuit Court

of Appeals these propositions were decided: (1) Independently of statute, the railway could not be required to deliver to the Southern Railway Company for transportation to the Central Stock Yards Company the live stock, though shipped to and ultimately destined to the stock yards company. The Louisville and Nashville Company, the court said, performed its duty under the common law when it provided a place for disembarkation of the stock at the Bourbon Stock Yards, though that place was fixed by contract with the latter company. (2) That the refusal of the Louisville and Nashville Company to make such transfer of stock to the Southern Railway Company was not a violation of § 3 of the Interstate Commerce Act. (3) Considering the case more broadly and as involving the right to require one railroad to interchange traffic with another, the position of the Central Stock Yards Company would be untenable, because, as it was held at common law, a railroad is only bound to transport freight at its own terms. (4) If the constitution of Kentucky could be construed to require such delivery of the live stock, it was invalid in so far as it affected interstate commerce. The case, therefore, left local commerce untouched. It declared no principle that precluded a State by legislation, constitutional or statutory, to require such transfer of stock if it applied only to commerce within the State. The case came to this court, and here also it was considered only as it affected interstate commerce. It is true it was said that "if the cattle are to remain in the defendant's cars it cannot be required to hand those cars over to another railroad without a contract, and the courts have no authority to dictate a contract to the defendant, or to require it to make one." This expressed only a limit upon the power of the courts, not of a legislature or a constitution, for it was also said "there is no act of Congress that attempts to give courts a power to require contracts to be made in a case like this." And the cases which were cited sustain the view that the impotency of the courts was not because of a right in the railroads, which were exempt from legislative regulation, but a right only exempt from control by the courts in the

absence of legislation. None of the cases declare otherwise. They interpreted the then existing legislation, and did not attempt to decide what legislation might be competent. Indeed, Judge Jackson (afterwards a justice of this court) in *Kentucky & I. Bridge Co.* v. *Louisville & Nashville R. R. Co.*, 37 Fed. Rep. 567, 634, strongly intimated that Congress had the power to do what he, exercising the powers of the Circuit Court, could not do without legislative authority.

I will assume, therefore, the power of the State to require an exchange of cars between railroads, and consider only what are the limitations upon the exercise of the power, not broadly, for the case has been brought into the narrow requirements of provision for compensation and security. Must such provisions be explicit in the law? May not the principle or rule of regulation be prescribed by law, statutory or constitutional, and the conditions of its application be ascertained and enforced by the courts or an administrative body? To what extent a court may be made an instrumentality in the administration of the laws of a State I may refer to the *Virginia Railroad Commission Cases*, 211 U. S. 210. See also *Kohl* v. *United States*, 91 U. S. 367.

If the State may so distribute its power of regulation it is certainly not within the province of this court to say that it has not done so against a contrary view, expressed or assumed, by the courts of the State. We can only deal with the result, that is, the ultimate action of the State, through any of its instrumentalities, as offending the Fourteenth Amendment of the Constitution of the United States. The procedure is for the determination of the State. This principle is conspicuously illustrated in *Waters-Pierce Oil Co.* v. *State of Texas, ante,* p. 86, and is also illustrated by the decisions under the Massachusetts and New Hampshire mill acts, *infra.* What, then, is the effect of the judgment under review?

It will be observed that the constitution puts an obligation upon railroad companies to "receive, transfer, deliver and switch empty or loaded cars," and to "move, transport, receive, load or unload all the freight in carloads or less quantities

coming to or going from any railroad . . . with equal promptness and dispatch, and without any discrimination as to charges, preferences, drawback or rebate in favor of any person . . . in any matter as to payment, transportation, handling or delivering," and to "receive and transport all freight, from and to any point where there is a physical connection between the tracks of said companies." The constitution, therefore, imposes a duty, it is true, but not a duty to be uncompensated. The special emphasis of the prohibition of favor as to charges makes conspicuous and indisputable the right to make and enforce them if made and enforced without "favor to any person." There could be no discrimination "as to charges," if there were no charges, no drawback or rebate from them; and the right to require security for the return of the cars is left untouched. Nor have the constitutional provisions been limited by the decree under review.

It does not adjudge that the service required of the Louisville and Nashville Railroad should not be compensated. The right of the railroad company to charge for the use of its cars is declared. The court said that the transfer of the cars was a use of them in the interest of the public. "If this," the court further observed, "is in a sense the taking of its property for private purposes, appellant [defendant in error], as a common carrier, must submit to it, for it is only a temporary and necessary use of its property. Appellant cannot suffer loss by such use of its cars. If it delivers its cars to the Southern Railway Company to be taken to appellee [Central Stock Yards] for the loading and unloading of stock, that company has no right to detain them longer than a reasonable time for that purpose, and must return them. Appellant may charge a reasonable amount for the use of its cars, and if they are not returned, or if detained more than a reasonable time, it may sue the delinquent road for damages, or apply to a court of equity for a mandatory injunction to compel the return of cars. Indeed, it can suffer no loss which the law may not remedy." And the court pointed out that by regulations between railroads cars were inter-

changed between them at a fixed charge. It is entirely consistent with the opinion that plaintiff in error may charge for the delivery of its cars, either when the cattle are shipped or when their destination is changed, or at the time of delivery to the Southern Railway Company. It is also entirely consistent with the opinion of the court that plaintiff in error can exact such stipulations from the Southern Railway Company as will protect it fully. The practice of connecting roads should be regarded, I think, when considering so simple a servitude as imposed in this case upon property devoted to a public use, and subject, because of such use, to regulation by the State. In this every right of plaintiff in error would be preserved. In this every power of the State would be preserved. I do not stop to make a comparison between such right and such power, but I submit this court should put no limit upon the latter that is not clearly necessary to preserve the other.

Plaintiff in error makes no question of precedent or ultimate payment for the use of its cars, or the absence of provisions for their return. It is contended that in some way (in what way is not pointed out) the State must exercise its right of eminent domain, and unless the right be exercised through an impartial tribunal there is not due process of law. It is also contended that there is an attempted transfer of terminals, and the duty of a local transfer company imposed on plaintiff in error, which in some way takes its property without due process of law. The question made then is of an inviolable right, impregnable in constitutional protection, against a legislative regulation such as in the case at bar, and to what contemplation does this bring us? If the right is impregnable in constitutional protection against regulation in the interest of *intra*state commerce it is also impregnable in such constitutional protection against regulation in the interest of *inter*state commerce. Are we prepared to announce that conclusion? The consequences of it are certainly quite serious.

The act of June 29, 1906, 34 Stat. 584, c. 3591, provided that "The term 'transportation' shall include all of the articles, in-

strumentalities and facilities of shipment or carriage," and further provides that every carrier subject to its provisions shall "provide and furnish transportation upon reasonable request therefor, and to establish through routes and just and reasonable rates applicable thereto." (Section 1.)

The act also provides that such carriers, upon the application of any lateral branch line of railroad or of any shipper, shall construct and operate switch connections and shall furnish cars for the traffic thereover. And the commission is given power to enforce such duty.

The commission is also given the power to divide a joint rate and establish joint rates and through routes. The commission further has the power to fix the compensation to be paid to the owner of property transported for any instrumentality furnished by him.

These are some of the regulations of interstate commerce, regulations of great reach and consequence, and they are not more specific as to compensation or security for the use or loss of cars than the constitution of Kentucky. And I submit that the power of a State over its domestic commerce is as great as the power of the Nation over interstate commerce.

The exigencies of this case do not require me to distinguish between those sovereign powers of the State denominated the power of eminent domain and the police power. Both may be exercised over private property. By the exercise of the first power property is taken and compensation for it is a necessary condition; by the exercise of the second power property is subjected to regulation and a provision for compensation is not necessary. When regulation is transcended and becomes a taking of property may, at times, be a close question, but the power of regulation must not be overlooked or underestimated. It is, as I have said, an exercise of the police power, and that is the most absolute of the sovereign powers of the State. We said in *Bacon* v. *Walker*, 204 U. S. 311, that it "extends to dealing with the conditions which exist in a State as to bring out of them the greatest welfare of its people." In *Otis Co.* v. *Ludlow Co.*, 201

U. S. 140, this court sustained the Massachusetts Mill Act, which gave the right of one owner of land on a stream to flow the land of another, against the charge that it was contrary to the Fourteenth Amendment of the Constitution of the United States as taking property without due process of law, in that it made no adequate provision for the payment of damages caused by an exercise of the rights conferred by the act. The provision for payment was an action for damages. The use of property in that case was as complete and more enduring than in this, and we said of it: "The right of the lower owner only becomes complete when the land is flowed, and as, even then, it is not a right to maintain the water upon the plaintiff's land, but merely a right to maintain the dam subject to paying for the harm actually done, we see nothing to complain of in that regard." See *Head* v. *Amoskeag Mfg. Co.*, 113 U. S. 9. This court, therefore, has decided that a simple action of damages is sufficient security for compensation for that use of property, which this court, and almost every court in the Union, has held to be a taking. *Pumpelly* v. *Green Bay Co.*, 13 Wall. 166.

It is true it is held by the Supreme Judicial Court of Massachusetts that the principle upon which the Mill Act is founded is not the right of eminent domain, but the resulting general good of all or the public welfare. *Murdock* v. *Stickney*, 8 Cush. 113. And this court, yielding also to that purpose, has quite recently declared that a State might, in order to meet new conditions, elevate into a public use of property that which under other conditions had universally been held to be a private use. *Clark* v. *Nash*, 198 U. S. 361; *Strickley* v. *Highland Boy Mining Co.*, 200 U. S. 527. See also *Offield* v. *New York & N. H. R. R. Co.*, 203 U. S. 372.

Other cases may be adduced for illustration. I think, therefore, that it might easily be contended that the service required of plaintiff in error cannot be considered in any legal or practical sense a taking of property. Let us keep steadily in mind what it is that is required and what the requirement involves of the use of plaintiff in error's cars. It is a use not different from that

they served from the moment of starting, or would serve if the end of the transportation be the Bourbon Stock Yards. If the end of the transportation be made the Central Stock Yards, there is the added element only that a limited and temporary possession of the cars is given to the Southern Railway Company, a possession, it must be said, not required in the interest of that company, but in the interest of the commerce of which it and the plaintiff in error are but instrumentalities, and as aids to which they were organized and are permitted to exist.

But I do not have to take this position, strongly supported as it may be. It is enough for my purpose that the constitution of the State provides for compensation for the duty it imposes on the railroads.

I am authorized to say that MR. JUSTICE HARLAN and MR. JUSTICE MOODY concur in this dissent.