(No. 12180.—Judgment affirmed.)

THE STATE PUBLIC UTILITIES COMMISSION *ex rel.* The Alton Board of Trade, Appellee, *vs.* THE CLEVELAND, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY, Appellant.

*Opinion filed October 21, 1918.*

PUBLIC UTILITIES—*what is not a furnishing by railroad of its terminal facilities to another.* Even though the entire route of a proposed shipment of a car is within a city from the shipper's plant on a terminal railroad to the consignee's plant on another railroad, the entire distance being less than two miles and the greater part of the other railroad company's haul being over its team track, the latter company, when tendered the regular tariff rate for a haul of two miles, cannot lawfully refuse to accept the shipment at the intersection of its main line with the terminal company's line for transportation to destination upon the ground that the transaction is, in effect, a furnishing by the company of its terminal facilities to the other company.

APPEAL from the Circuit Court of Sangamon county; the Hon. E. S. SMITH, Judge, presiding.

GEORGE B. GILLESPIE, (L. J. HACKNEY, and F. L. LITTLETON, of counsel,) for appellant.

EDWARD J. BRUNDAGE, Attorney General, GEORGE T. BUCKINGHAM, WILLIAM E. TRAUTMANN, ALBERT D. RODENBERG, and MATTHEW MILLS, for the Public Utilities Commission.

J. V. E. MARSH, for the Alton Board of Trade.

Mr. JUSTICE FARMER delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Sangamon county affirming an order of the Public Utilities Commission. The Illinois Glass Company is an industry located in the city of Alton on the tracks of the Illinois Terminal Railroad Company in said city. It desired to ship a boiler or boilers from its plant on the terminal company's

road to a department of the glass company in another part of the city. In the movement the car would be required to be hauled by the terminal company from the glass company's plant to a point where said terminal railroad connects with the tracks of the Cleveland, Cincinnati, Chicago and St. Louis Railway Company in the city of Alton, and thence by the latter company over its main and team tracks to a point opposite the department of the glass company where the boilers were to be unloaded. The Cleveland, Cincinnati, Chicago and St. Louis Railway Company (hereafter referred to as appellant) refused to receive the car for transportation to its place of destination, and thereupon the Alton Board of Trade, of which the Illinois Glass Company was a member, filed a complaint with the Public Utilities Commission against appellant. A hearing was had before said commission and a finding made that it was the duty of appellant to receive from the terminal company shipments of the character referred to and transport them to the point of destination upon its line. It was therefore ordered that appellant comply with the findings of the commission in said proceedings. The appellant appealed from the order of the Public Utilities Commission to the circuit court of Sangamon county, and that court affirmed the order of the Public Utilities Commission, and this further appeal is prosecuted to this court.

The movement of the proposed shipment was wholly within the city of Alton from the point where it originated to the point of destination. When appellant refused to accept the shipment it was transported to its destination by wagon and team, and no order was asked by the complaint relating to said shipment, but the order asked was that appellant perform such service in the future as it was asked to do in the shipment of the boilers. Appellant's position is that the shipment would have been a movement from a point on one railroad to a team track of another railroad, all within the switching district of the city of Alton, and

that the request to appellant to accept and transport the car in effect was an effort to compel appellant to give a competing road in Alton the use of appellant's terminal facilities provided by it for use in delivering freight coming into Alton on its lines.

Section 44 of the Public Utilities act makes it the duty of every railroad company to receive from every other railroad company having a track of the same gauge, at any point of connection, cars of proper standard and in proper condition and haul the same either to their destination, if that point is on the line of such railroad company, or to a point of transfer according to the route billed, where the destination is on the line of another railroad, "but nothing in this act shall be construed as requiring a common carrier to give the use of its terminal facilities to another common carrier engaged in like business." A railroad company can not be required to give the use of its terminal facilities to another railroad company where it has received no part of the haul. *Louisville and Nashville Railroad Co.* v. *Central Stock Yards Co.* 212 U. S. 132; *Missouri Pacific Railway Co.* v. *State of Nebraska,* 217 id. 196.

No tariff schedules of appellant specifically covered such a movement as was desired, but, as we understand it, there was a schedule of tariffs for a haul of two miles or less, and that the charges fixed by said schedule for a haul of two miles was tendered appellant. The terminal company is engaged largely in switching in Alton and between that city and industries in near-by cities. The proposed shipment originated on the terminal railroad in the city of Alton, which road intersected the appellant's main line about 3000 feet from the starting point of the shipment. From the intersection of the two roads the route of the proposed shipment was over appellant's main line a short distance and then over appellant's team track to the point of destination, much the larger part of the haul being over the team track. Appellant contends that under the facts and circumstances

no duty was imposed upon it by law to accept such a ship-
ment for delivery on its terminal facilities or to file a sched-
ule of tariffs for such a shipment. If the car had been
tendered appellant at a shipping point on its main line two
miles from its team track it would have been its duty to
accept and transport it. While a railroad company cannot
be required to accept freight between stations when offered
the schedule charges for transportation to destination, we
are of opinion that under the facts and circumstances of
this case it was the duty of appellant to accept the car at
the point of intersection of the two roads when offered its
charges for a two-mile haul. A case similar in principle
was considered by the Supreme Court of the United States
in *Grand Trunk Railway Co.* v. *Michigan Railroad Com.*
231 U. S. 457. It was there held with reference to ship-
ments wholly within the city of Detroit, the fact that a
movement of freight begins and ends within the limits of
a city does not take from it its character of an actual trans-
portation between two termini, and that while a city may
be in some sense a terminal unit, the State Railroad Com-
mission of Michigan may regulate traffic between different
points within said city as transportation, and that such regu-
lation does not amount to an appropriation of the terminals
of one road for the use and benefit of other roads.

It is also contended by appellant that no findings were
made or rendered by the Public Utilities Commission upon
which the order made by that commission was based, and
that the circuit court erred in affirming the order for that
reason. Section 65 of the Public Utilities act provides for
a hearing upon a complaint, and "at the conclusion of such
hearing the commission shall make and render findings con-
cerning the subject matter and facts inquired into and enter
its order based thereon." The only finding made by the
commission was that the shipment could not be construed
as requiring any common carrier to give the use of its
terminal facilities to another common carrier engaged in

like business, and that it was therefore the duty of appellant to receive from the terminal company shipments of the character referred to and transport them to the point of destination upon its line. It was therefore ordered and directed that appellant comply with the findings of the commission. The findings of the commission are more in the nature of conclusions of law than findings of fact, and if there were any real controversy as to the facts it might be a reversal of the judgment would be required. The facts relied upon by both parties are set up in the complaint and answer, and, as we understand it, are not in dispute. The controversy is as to the duty imposed by law upon appellant under the facts not controverted. In our judgment a reversal would not be justified on the ground that the commission did not "make and render findings concerning the subject matter and facts" sufficient to support the order.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*