# INTERSTATE COMMERCE COMMISSION *v.* DELAWARE, LACKAWANNA AND WESTERN RAILROAD COMPANY.

## APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 362.   Argued February 21, 23, 1910.—Decided March 7, 1910.

Where a statute creates a new right and a commission is given power to extend relief in regard thereto at the instance of a specified class, its power is limited thereto; and so held that the Interstate Commerce Commission has power to compel switch connections with lateral branch roads under § 1 of the act of March 4, 1887, c. 104, 24 Stat. 379, as amended by § 1 of the act of June 29, 1906, c. 3591, 34 Stat. 584, only at the instance, as stated therein, of shippers; it has no power to do so on the application of a branch railroad.

*Quære* and not decided, whether the railroad on whose behalf the application in this case was made was a lateral branch road within the meaning of the statute.

166 Fed. Rep. 498, affirmed.

THE facts are stated in the opinion.

*The Solicitor General* for appellant:

Congress had power to require connecting tracks to be installed. The power of Congress to regulate interstate commerce is as broad in its scope as the power of the States

in the regulation of their internal commerce. *Wisconsin, Minn. & Pac. Railroad Co.* v. *Jacobson*, 179 U. S. 287.

The Rahway Valley Railroad Company is, with respect to appellee, a "lateral, branch line of railroad" within the meaning of § 1 of the act to regulate commerce, as amended.

The terms "lateral railroads" and "branch railroads" most frequently occur in condemnation law. They are used to distinguish between mere spurs and sidetracks, which are necessary facilities to aid in the operation of the main line, and tracks which are not necessary to the operation of the main line, but are built as feeders and outlets of the main line. *C. & E. I. Railroad Co.* v. *Wiltse*, 116 Illinois, 449. Ordinarily, the term "lateral railroad" implies a line which serves as a feeder or outlet (or both) to another main or trunk line.

If a railway is not a lateral branch line, it is entitled to a connection in a proper case under § 3 of the act to regulate commerce.

Whether the Rahway Company's right to a connection is based on § 1 or on § 3, the Commission had jurisdiction to hear and decide the controversy under §§ 12, 13, and 14 of the act to regulate commerce; and it also had that power under § 15 of the act.

The legislation is remedial, and consequently it should be liberally construed for the benefit of those to whom rights are given. The right to a connection under proper circumstances is, in terms, conferred upon the lateral roads.

The Commission having power to decide in this proceeding whether the circumstances justify a connection between the tracks of appellee and of the Rahway Company, the propriety of its decision on the facts cannot be reviewed by the courts, for there certainly has been no unreasonable or palpably abusive exercise of the Commission's power. *Interstate Comm. Comm.* v. *Illinois Cent. Railroad Co.*, 215 U. S. 452.

The bill and affidavits filed in support of it fail to show a case for relief on the merits. The conditions which entitle

a lateral road to a connection under § 1 of the act are: That the connéction be reasonably practicable; that it can be made with safety; and that it will furnish sufficient business to justify its construction and maintenance. The requirements of § 3 can be no greater. Appellee not only has failed to show that the statutory conditions do not·exist, but it likewise has failed to show any necessity for a preliminary injunction.

*Mr. William S. Jenney* for appellee:

The Rahway Valley Railroad Company is not a lateral branch line of railroad within the meaning of the clause.

Congress was careful to use the limited term "lateral branch line of railroad," in contradistinction to the general term "common carrier," or "railroad of a common carrier," which it has uniformly used in all other sections of the act to refer to railroads generally. Evidently it must have intended to differentiate between the two.

At common law the courts could not compel a physical connection between two railroads, *Wisconsin, M. & P. R. R. Co.* v. *Jacobson*, 179 U. S. 288, and the act left common carriers free to exercise to their full extent, all the rights and privileges they had under the common law, so far as those rights and privileges were not rendered unlawful by the act itself. *Gamble Robinson Mfg. Co.* v. *Chicago & N. W. R. Co.*, 168 Fed. Rep. 161; *Iowa Bridge Co.* v. *L. & N. Ry. Co.*, 37 Fed. Rep. 567.

As to the limitation to be placed upon the words "lateral branch line of railroad," see *Newhall* v. *Galena & C. U. Ry. Co.*, 15 Illinois, 273; *Blanton* v. *Richmond F. & P. Ry. Co.*, 86 Virginia, 618; *Goelet* v. *Met. Transit Co.*, 48 Hun (N. Y.), 520; 33 Cyc. 120; Standard Dictionary, under words "lateral" and "branch."

In fact a lateral branch road is a part·of or an offshoot from a main line.

By·the clause the Commission is empowered to order a

connection only upon complaint made by a shipper; and the Rahway Valley Railroad Company is not a shipper, within the meaning of the clause.

Congress did not intend to so add to the common law obligations of a carrier as to require it to furnish cars to another carrier connecting or competing with it.

The remedy provided for the enforcement of the right created by the clause, is confined to a proceeding before the Commission, instituted by a shipper, and that remedy is exclusive. *Pollard* v. *Bailey*, 20 Wall. 520; *Dollar Savings Bank* v. *United States*, 19 Wall. 227; *Wheaton* v. *Peters*, 8 Pet. 589; *Farmers' & Mechanics' Bank* v. *Dearing*, 91 U. S. 29; *United States* v. *Perryman*, 100 U. S. 235; *Fourth Nat. Bank* v. *Francklyn*, 120 U. S. 747; *Banks* v. *Manchester*, 128 U. S. 244; *Thompson* v. *Hubbard*, 131 U. S. 123.

At common law a railroad company was not required to construct a spur track for a shipper located near its line, or to make a physical connection with another railroad. *Jones* v. *Newport News & M. V. Ry. Co.*, 65 Fed. Rep. 736; *Mercantile Trust Co.* v. *Columbus S. & H. R. Co.*, 90 Fed. Rep. 148; *Wisconsin, M. & P. R. R. Co.* v. *Jacobson*, 179 U. S. 288.

The clause in question creates a new right unknown to the common law. It provides the remedy; and that remedy is exclusive and nothing in §§ 12 and 13 of the act affect this rule. *Durant* v. *Albany County*, 26 Wend. (N. Y.) 65; *Janney* v. *Buell*, 55 Alabama, 408; *Farribault* v. *Misener*, 20 Minnesota, 396; Endlich on the Int. of Stat. 10.

Congress gave to the shipper a right to a connection between a main line and a private side track or lateral branch line of railroad on which the shipper might be located. It provided a specific and adequate remedy to enforce that right. If Congress intended to confer the same right to a connection on a lateral branch line of railroad, considered apart from the interests of the shippers along that road, it omitted to provide a specific remedy, which is not a case of failure to accomplish a clearly defined object or to give effect

to an unmistakable intent because of the use of loose, uncertain or ambiguous language, but a plain case of omission.

The courts will not be inclined to ascribe error or mistake to a coördinate branch of the Government. The presumption must be that the legislature acted advisedly, if not wisely. It must be presumed to have intended to omit just what it did in fact omit. See proceedings in Senate on adoption of the clause. Cong. Rec., May 6, 1906, p. 6761; May 17, 7225; and see also pp. 7963, 8158; *Reg.* v. *Treasury*, 20 L. J. Q. B. 312; *Jones* v. *Smart*, 1 T. R. 44; *United States* v. *Goldenberg*, 168 U. S. 95.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a bill in equity brought by the plaintiff, appellee, to prevent the enforcement of an order made by the appellant, requiring the plaintiff to establish a switch connection with the Rahway Valley Railroad Company's road. 14 I. C. C. Rep. 191. The order was made on June 24, 1908, under the Act to Regulate Commerce, February 4, 1887, c. 104, § 1, 24 Stat. 379, as amended by the act of June 29, 1906, c. 3591, § 1, 34 Stat. 584. Then this bill was brought; the Attorney General filed a certificate that the case was of general public importance; act of June 29, 1906, c. 3591, § 5, 34 Stat. 590; act of February 11, 1903, c. 544, §.1, 32 Stat. 823; the Interstate Commerce Commission demurred; the case was brought up before three circuit judges; a preliminary injunction was issued on the ground that the appellant, the Interstate Commerce Commission, had exceeded its power, and an appeal was taken at once and directly to this court as allowed by the act of 1906. 166 Fed. Rep. 498.

The Rahway Valley road is about ten miles long. It runs southeasterly from Summit through Kenilworth to Roselle, its terminus on the Lehigh Valley Railroad, and also southwesterly from Kenilworth to Aldene, its terminus on the Central Railroad of New Jersey, all the places named being

in New Jersey.  The Delaware, Lackawanna and Western
Railroad Company, the appellee, is a common carrier subject
to the acts of Congress regulating commerce.  Between Den-
ville, New Jersey, and Hoboken it has two branches or lines,
the Northerly, the Boonton branch, being devoted specially
to freight, the Southerly, the Morris and Essex line, devoted
as exclusively as may be to passenger traffic.  This Southerly
branch passes through Summit, and the Rahway Valley Rail-
road Company petitioned for and got an order requiring the
appellee to make a switch connection with its road at that
place.  As the order interferes with the just stated policy of
the appellee as to its Southerly line, it resisted the petition
and brought this suit.

The material part of the act of Congress upon which the
Commission relies is as follows:

"Any common carrier subject to the provisions of this Act,
upon application of any lateral, branch line of railroad, or of
any shipper tendering interstate traffic for transportation,
shall construct, maintain, and operate upon reasonable terms
a switch connection with any such lateral, branch line of
railroad, or private side track which may be constructed to
connect with its railroad, where such connection is reason-
ably practicable and can be put in with safety and will furnish
sufficient business to justify the construction and maintenance
of the same; and shall furnish cars for the movement of such
traffic to the best of its ability without discrimination in favor
of or against any such shipper.  If any common carrier shall
fail to install and operate any such switch or connection as
aforesaid, on application therefor in writing by any shipper,
such shipper may make complaint to the Commission, as
provided in section thirteen of this Act, and the Commission
shall hear and investigate the same and shall determine as
to the safety and practicability thereof and justification and
reasonable compensation therefor and the Commission may
make an order, as provided in section fifteen of this Act,
directing the common carrier to comply with the provisions

of this section in accordance with such order, and such order shall be enforced as hereinafter provided for the enforcement of all other orders by the Commission, other than orders for the payment of money."

The question is raised whether the Rahway road is a 'lateral, branch line of railroad' relatively to the appellee. There certainly is force in the contention that the words of the statute mean a railroad naturally tributary to the line of the common carrier ordered to make the connection, and dependent upon it for an outlet to the markets of the country, which, according to the bill, the Rahway road is not. There is force in the argument that a road already having connection with the roads of two carriers subject to the act and having joint routes and through rates with them cannot be regarded as a lateral branch line of railroad of another road situated like the appellee. On the other hand, it would be going far to lay down the universal proposition that a feeder might not be a lateral, branch road of one line at one end and of another at the other. We leave this doubtful question on one side because we agree with the circuit judges in the considerations upon which they decided the case.

The statute creates a new right not existing outside of it. *Wisconsin, Minnesota & Pacific Railroad Co.* v. *Jacobson,* 179 U. S. 287, 296. It is plain from the provisions of the act, the history of the amendments and justice, that the object was not to give a roving commission to every road that might see fit to make a descent upon a main line, but primarily, at least, to provide for shippers seeking an outlet either by a private road or a branch. The remedy given by the section creating the right is given only on complaint by the shipper. We are of opinion that the remedy is exclusive, on familiar principles, and that the general powers given by other sections cannot be taken to authorize a complaint to the Commission by a branch railroad company under § 1. If they were applicable to a branch road they would have been equally applicable to shippers, and there was no more reason to men-

tion complaints by shippers than by others. The argument that shippers were mentioned to insure their rights in case of a refusal to connect with a lateral line is excluded by the form of the statute, which obviously is providing the only remedy that Congress has in mind. It may or may not be true that the distinction is not very effective, but it stands in the law and must be accepted as the limit of the Commission's power.

*Decree affirmed.*