LOUISVILLE & N. R. CO. v. INTERSTATE COMMERCE COMMISSION.

(Circuit Court, W. D. Kentucky. April 9, 1910.)

1. CONSTITUTIONAL LAW (§ 62*)—INTERSTATE COMMERCE COMMISSION—POWER TO FIX RATES—CONSTITUTIONALITY OF DELEGATION.

The power delegated by Congress to the Interstate Commerce Commission to prescribe railroad rates for the future is legislative in its nature, and, since it concerns the administrative affairs of the government which by reason of variable conditions cannot be covered in detail by direct legislation, its delegation is not in violation of the Constitution, and it

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

may be as fully exercised by the commission, as Congress might have exercised it, subject to any limitations imposed by Congress itself.

[Ed. Note.—For other cases, see Constitutional Law, Dec. Dig. § 62.*]

**2.** COMMERCE (§ 1*)—INTERSTATE COMMERCE—CONSTITUTIONAL POWER OF CONGRESS TO REGULATE.

The provision of Const. U. S. art. 1, § 9, that "no preference shall be given by any regulation of commerce or revenue to the ports of one state over those of another," does not prevent the exercise of the power of Congress by delegated authority to regulate commerce between ports of different states merely because such regulation may incidentally affect the commerce of a port in still another state.

[Ed. Note.—For other cases, see Commerce, Dec. Dig. § 1.*]

**3.** COMMERCE (§ 85*)—INTERSTATE COMMERCE COMMISSION—POWERS IN FIXING RATES.

Section 15 of the interstate commerce act (Act Feb. 4, 1887, c. 104, 24 Stat. 384 [U. S. Comp. St. 1901. p. 3165]), as amended by Act June 29, 1906, c. 3591, § 4, 34 Stat. 589 (U. S. Comp. St. Supp. 1909, p. 1158), which authorizes and empowers the Interstate Commerce Commission "whenever, after full hearing upon a complaint, * * * it shall be of the opinion" that the prescribed conditions exist, to determine and prescribe maximum rates to be charged by a carrier, places no restrictions on the commission in respect to the matters which it may take into consideration, or the weight it shall give to every of such matters in informing itself what opinion it ought to give, except that it shall not abuse its authority and proceed arbitrarily without regard to the justice of the case, or give a judgment not fairly within its power.

[Ed. Note.—For other cases, see Commerce, Dec. Dig. § 85.*]

**4.** COMMERCE (§ 96*)—INTERSTATE COMMERCE COMMISSION—REVIEW OF ORDERS BY COURT.

A Circuit Court in a suit to enjoin the enforcement of a rate prescribed by the Interstate Commerce Commission does not act as an appellate rate making commission, but its office is to see that the commission does not exceed its powers, and not to determine whether it erred in the exercise of them. While the court has power to determine whether a rate prescribed is reasonable or not, the power may be limited by circumstances which do not admit of its exercise until the proper conditions exist; and the rule by which it is exercised is that the court will not interfere with the action of the commission, unless it clearly appears that it is beyond its authority and injuriously affects some substantial right of the complainant—is confiscatory, to use that term in its broad sense. Whether it is so or not is the test of reasonableness in such a controversy.

[Ed. Note.—For other cases, see Commerce, Dec. Dig. § 96.*]

**5.** COMMERCE (§ 92*)—INTERSTATE COMMERCE COMMISSION—REVIEW OF ORDERS BY COURT.

Congress did not undertake by the interstate commerce act and its amendments to confer any new judicial power upon the courts, but assumed that their ordinary powers would continue and might be invoked by parties complaining of injuries, past or apprehended, from some abuse of its power by the commission resulting in a trespass upon vested rights.

[Ed. Note.—For other cases, see Commerce, Dec. Dig. § 92.*]

**6.** COMMERCE (§ 85*)—INTERSTATE COMMERCE COMMISSION—FIXING RATES OF CARRIERS—LIMITATION OF POWER.

The interstate commerce act (Act Feb. 4, 1887, c. 104, § 15, 24 Stat. 384 [U. S. Comp. St. 1901, p. 3165]), as amended by Act June 29, 1906, c. 3591, § 4, 34 Stat. 589 (U. S. Comp. St. Supp. 1909, p. 1158), conferring power on the Interstate Commerce Commission to determine and prescribe "just and reasonable maximum rates," does not intend to pre-

scribe any closer definition of the quality of an act done by the commission which will defeat its validity than that it is prohibited by the Constitution, or by legislation clearly or by necessary implication forbidding it.

[Ed. Note.—For other cases, see Commerce, Dec. Dig. § 85.*]

7. COMMERCE (§ 88*)—INTERSTATE COMMERCE COMMISSION—ORDER PRESCRIBING RATES—VALIDITY.

It is no objection to the validity of an order of the Interstate Commerce Commission determining and prescribing rates to be charged by a carrier that it would derange the schedule of rates on other routes.

[Ed. Note.—For other cases, see Commerce, Dec. Dig. § 88.*]

8. COMMERCE (§ 88*)—INTERSTATE COMMERCE COMMISSION—HEARING OF COMPLAINTS—PROCEDURE.

The procedure prescribed by the interstate commerce act (Act Feb. 4, 1887, c. 104, § 13, 24 Stat. 383 [U. S. Comp. St. 1901, p. 3164]), requiring a statement of charges against a carrier filed with the Interstate Commerce Commission to be forwarded "to such common carrier" who shall be required to answer the same, which procedure is required to be followed in case of hearings for the prescribing of rates under section 15 as amended by Act June 29, 1906, c. 3591, § 4, 34 Stat. 589 (U. S. Comp. St. Supp. 1909, p. 1158), is analogous to that in all legal controversies and sufficient, and it is no objection to the validity of an order of the commission prescribing rates to be charged by a carrier between certain localities that it will affect the rates of other carriers not before the commission who may be in the succession of all or any interstate transportation which includes that in question.

[Ed. Note.—For other cases, see Commerce, Dec. Dig. § 88.*]

9. COMMERCE (§ 88*)—INTERSTATE COMMERCE COMMISSION—REVIEW OF ORDERS BY COURT.

On complaint made by shippers in New Orleans to complainant railroad company that certain through rates on certain classes of goods were unreasonably high and amounted to more than the sum of the local rates, which had been in force for 20 years, and asking for a reduction, complainant changed its schedule by raising the local rates so that their sum should equal the through rates which it had been charging. Thereafter the New Orleans Board of Trade filed a complaint with the Interstate Commerce Commission, which, after notice to complainant and a full hearing, found that the rates charged were unjust and unreasonable and entered an order requiring a reduction of the local rates to the old schedule, and the reduction of the through rates to the sum of the locals so reduced. Complainant then brought suit to enjoin the enforcement of such order. There was no claim that the rates fixed thereby were confiscatory or unremunerative. *Held*, that on the facts appearing the order was within the scope of the powers of the commission, and that there was no ground upon which the court was authorized to interfere with its enforcement.

[Ed. Note.—For other cases, see Commerce, Dec. Dig. § 88.*]

In Equity. Suit by the Louisville & Nashville Railroad Company against the Interstate Commerce Commission. Decree for defendant.

Ed. Baxter, Perkins Baxter, and W. G. Dearing, for complainant.
George Du Relle, U. S. Atty., and William E. Lamb, Special Asst. U. S. Atty., for defendant.

Before SEVERENS, WARRINGTON, and KNAPPEN, Circuit Judges.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

SEVERENS, Circuit Judge. Three several complaints were made to the commission concerning certain freight rates charged by this complainant upon traffic between New Orleans, La., and Mobile, Ala., between New Orleans and Pensacola, Fla., and between New Orleans and Montgomery, Selma, and Prattville; each of which last three mentioned places being in Alabama and within the same zone of official classification. The complaint in each case was that the rates were unreasonable and unjust per se, and were unduly prejudicial to the commercial interests of New Orleans. The complaints were made by the board of trade of the last-named city. The commission gave notice thereof to the complainant and fixed a time and place for hearing. The complainant appeared and answered. Proofs were submitted by the respective parties and considered by the commission. Whereupon the commission, being of opinion that the rates which were charged were too high, reduced them in respect to several classes of freight, and fixed them at specified new rates, which it ordered the complainant to observe. By its order the date upon which it should become effective was stated. No further statement in detail of these proceedings is necessary, as their regularity is not contested.

A brief history of the matter of rates on the routes above mentioned is necessary to a full understanding of the action of the commission and the effect of its order. A schedule of rates on these routes was fixed by the railroad company in 1887, and adhered to until 1907, when, upon complaint made by shippers at New Orleans that the through rates were unreasonably high, and amounted to more than the sum of the local rates, and asking for a reduction of through rates to rates not greater than the sum of the local rates between the termini of the through routes and intermediate points, the railroad company changed its schedule by raising the local rates so that their sum should equal the through rates which it had been charging. The through rates were left undisturbed. These conditions continued until the autumn of 1909, when the New Orleans Board of Trade made complaints of the existing rates to the Interstate Commerce Commission, urging that they were unreasonable and asking for an order requiring the reduction of the local rates to the old schedule, and the reduction of the through rates to the sum of the locals so reduced. The commission was of opinion that the known circumstances and the proofs supported the complaints, and on November 26, 1909, made the order in question. It is to be understood that what is here said relates to certain classes of freights and not to entire schedules. The object of this bill is to obtain a decree enjoining the commission from enforcing its order. The complaint made against it is that it is in excess of the authority conferred by the acts of Congress creating the commission and defining its powers, and that the order is in violation of the constitutional rights of the complainant. And it is further urged that the order is based upon manifest errors of law and fact, that the rates prescribed by it are unreasonably low and in violation of section 1 of the act (Act Feb. 4, 1887, c. 104, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3154]), and that it violates section 3, in that it creates undue and unreasonable preferences. From these premises it is seen that the subject of the controversy is an order prescribing

the maximum rates on interstate traffic. That the order concerns a subject within the scope of the powers of the commission cannot be doubted; and the first question is whether the order transcends the due limitation of the powers which are undoubtedly possessed by the commission.

In pursuing this inquiry it is of prime importance that we apprehend clearly the nature of the power on which the order rests; and for greater clearness it is well to emphasize the fact that the particular power in question is one which relates to the prescription of rules and regulations for future conduct, and it is not a power for affording remedies for past misconduct or other violations of legal rights. As has been pointed out in the opinions of the Supreme Court, the power thus defined is legislative in its nature; and it is well settled upon a long series of decisions by that court in the development of this subject that, when this legislative power concerns the administrative affairs of the government, it may be delegated to an officer, or a board already existing or created for the purpose, and, when so delegated, the power may be as fully exercised as the Legislature might have exercised it, subject to any limitations imposed by the Legislature itself. When a subject requires legislation for the regulation of future conduct, but the objects of it are so diffuse and variable that they cannot be distinctly apprehended and comprised in the ordinary terms of legislative classification, it is not unusual to prescribe general rules, if such do not already exist, and delegate the power to apply those rules to the varying circumstances which may arise and give occasion for control. The necessity of legislation in such form justifies its adoption; and it is not obnoxious to the Constitution, in that it delegates legislative power. Wayman v. Southard, 10 Wheat. 1, 6 L. Ed. 253; Field v. Clark, 143 U. S. 649, 12 Sup. Ct. 495, 36 L. Ed. 294; Buttfield v. Stranahan, 192 U. S. 476, 24 Sup. Ct. 349, 48 L. Ed. 425; Union Bridge Co. v. United States, 204 U. S. 364, 27 Sup. Ct. 367, 51 L. Ed. 523.

And it would be difficult to instance an occasion in the history of federal legislation so plainly subject to the application of this exceptional rule as the enactment of the interstate commerce law and the carrying forward of its scheme by subsequent amendments. It is manifest that some such scheme as this must have been adopted or the purpose to control carriers engaged in interstate commerce must fail. It would have been impossible for Congress to have foreseen the multitude of questions depending upon the special facts presented sometimes in one complication and sometimes in another, and declare a single rule applicable to each. The most that it could do would be to declare the general rules to indicate its purpose and to serve as guides in the determination of questions which would arise, and delegate the power of applying them to some competent public agency always in the field and ready to entertain and dispose of controversies. And it is indispensable to this power that the commission should have the right to exercise its judgment and to form conclusions upon the facts. To enable it to do this, the statute provides that notice shall be given to interested parties, that a hearing shall be had and proofs

taken. We think there is no valid constitutional objection to the law, in that legislative powers are improperly delegated.

Nor can we think that the power of the commission has been in this instance exercised in a way to violate any constitutional right of the railroad company. The fifth amendment to the Constitution, whereby the taking of private property for public use without just compensation is forbidden, is invoked. In other words, it is contended in argument that the order of the commission is confiscatory. But, as we have elsewhere stated, we do not think that the facts alleged in the bill are sufficient to support that conclusion. Reference is also made to the provision of the sixth clause of section 9 of article 1 of the Constitution, which is that: "No preference shall be given by any regulation of commerce or revenue to the ports of one state over those of another." But this does not prevent the exercise of the power of Congress by delegated authority to regulate commerce between ports of different states simply because such regulation may incidentally affect the commerce of a port in a still other state. If such an incidental consequence were admitted to be an insurmountable obstruction, the power of Congress to regulate commerce between the states would be seriously impaired. The provisions of the Constitution must be construed to be reciprocal and to operate harmoniously. Pennsylvania v. Wheeling, etc., Bridge Co., 18 How. 421, 15 L. Ed. 435; South Carolina v. Georgia, 93 U. S. 4, 23 L. Ed. 782; Armour Packing Co. v. United States, 209 U. S. 56, 79, 80, 28 Sup. Ct. 428, 52 L. Ed. 681.

But the constituting act may contain restrictions, which may be either in respect to the power itself or to the manner of its exercise. With respect to this particular power, on turning to the fifteenth section of the act as amended by the act of June 29, 1907, it is found that in such an emergency as this the commission is authorized and empowered, and it shall be, its duty, whenever, "after a hearing upon the complaint," it shall be of the opinion that any of the rates or charges "are unjust or unreasonable, or unjustly discriminatory, or unduly preferential or prejudicial, or otherwise in violation of the provisions of this act, to determine and prescribe what will be the just and reasonable rate or rates, charge or charges, to be thereafter observed in each case as the maximum to be charged." It is to be observed that the words are "whenever it shall be of opinion" that the conditions require it the commission is "authorized and empowered * * * to determine and prescribe what will be the just and reasonable rate," etc., to be thereafter observed. There is no restriction upon the commission in respect to the matters which it will take into consideration or the weight it shall give to every of such matters in informing itself what opinion it ought to give, except that it shall not abuse its authority and proceed arbitrarily without regard to the justice of the case or to give a judgment not fairly within its power.

It is not contended here that the commission acted willfully or otherwise improperly, except that it failed to give weight, or not sufficient weight, to this or that consideration, specifying some of those which the complainant thinks ought to have been weighed, and, if

weighed, should have produced a different opinion. And the affidavits of many expert and competent witnesses are produced, and state facts which might have been useful to the commission in forming its opinion. And they might be sufficient to induce us to think that the commission had erred in its conclusion. But they are not to any point which we are to consider. They do not rise to the issue here. The court is not an appellate rate-making commission. Its office is to see to it that the commission does not exceed its powers, and not to determine whether it erred in the exercise of them. As said by Mr. Justice White in delivering the opinion of the Supreme Court in Interstate Commerce Commission v. Illinois Central R. R., 215 U. S. 452, 30 Sup. Ct. 155, 54 L. Ed. 280:

> "Plain as it is that the powers just stated are of the essence of judicial authority, and which, therefore, may not be curtailed, and whose discharge may not be by us in a proper case avoided, it is equally plain that such perennial powers lend no support whatever to the proposition that we may, under the guise of exerting judicial power, usurp merely administrative functions by setting aside a lawful administrative order upon our conception as to whether the administrative power has been wisely exercised. Power to make the order, and not the mere expediency or wisdom of having made it, is the question."

If the order were so unreasonable or so manifestly unjust as to induce the belief that the fundamental principles of rational justice had been disregarded, or that some right secured by the Constitution had been violated, it would be our duty to prevent such a consequence by awarding an injunction.

It is scarcely credible that Congress should have intended that the courts should go into the details which the commission had assembled and considered in its inquiry, or supposed that the judges would be better qualified than a commission of experts, having experience in such matters, would be expected to have. Such duties are not judicial. Whether they could properly be imposed upon the judiciary it is not necessary to inquire. As to this, it is enough to refer to the decision of the Supreme Court of the United States in the case of United States v. Yale Todd, reported by Chief Justice Taney, and ordered by the court to be inserted in its reports, at the foot of United States v. Ferreira, 13 How. 40, 52, 14 L. Ed. 42, and the discussion of this subject in Interstate Commerce Commission v. Brimson, 154 U. S. 447, at pages 481, 482, 155 U. S. 3, 14 Sup. Ct. 1125, 15 Sup. Ct. 19, 38 L. Ed. 1047, 39 L. Ed. 49. And see, also, the case of Norwalk Street Railway Company's Appeal, 69 Conn. 576, 37 Atl. 1080, 38 Atl. 708, 39 L. R. A. 794, for a valuable opinion.

It may be observed in passing that in the mother country the limits of the respective departments of government are not so distinctly marked as they are by the Constitution of the United States, and hence we may not safely rely upon judicial utterances made in that country upon this subject. To say the least, the consideration just adverted to is very persuasive to the conclusion that Congress did not contemplate such a result as the vesting of administrative authority in the courts, in the absence of a clear indication that it was so intended. On the contrary, Congress has committed the power and

imposed the duty to ascertain facts and determine what is reasonable in regard to rates and charges in view of such facts on the commission.

It is contended and many authorities are cited to show, that the court has power to determine whether a rate is reasonable or not. This is admitted. But the proposition states only a part of the rule. The power may be limited by circumstances which do not admit of its exercise until the proper conditions exist. The court does not take the initiative in determining rates. That is for the commission. And, for the purpose of its inquiry and determination, a wide range is given it, limited only by the circumstances which it thinks relevant. When it has made its order, the court is open to complaint, and will consider whether the rate fixed by the commission is reasonable or not. It is at this point that the judicial power over the subject may be invoked. And the rule by which it is exercised is that it will not interfere with the action of the commission unless it clearly appears that it is beyond its authority, and injuriously affects some substantial right of the complainant—is confiscatory, to use that term in its broad sense. Whether it is so or not is the test of reasonableness in such a controversy.

That this is the relation of the functions of the commission and of the court, and of the order in which their functions shall be exercised, seems to have been the conception of the Supreme Court in the cases of Interstate Commerce Commission v. Louisville & Nashville R. R. Co., 190 U. S. 273, 23 Sup. Ct. 687, 47 L. Ed. 1047, Texas & Pac. Ry. v. Abilene Cotton Oil Co., 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553, and Prentis v. Atlantic Coast Line, 211 U. S. 210, 29 Sup. Ct. 67, 53 L. Ed. 150. Upon determining the controversy, the court does not proceed to declare what shall be the proper rate to prescribe. That would be to decide a legislative question. Moreover, Congress did not undertake to confer by this act any new judicial power upon the courts. It assumed that their ordinary powers would continue and might be invoked by parties complaining of injuries, past or apprehended, from some abuse of its power by the commission, resulting in a trespass upon vested rights. Upon this hypothesis the whole scheme of the act in this regard becomes harmonious with all related principles of law, and the respective provinces of the commission and of the courts become clearly defined.

The term "reasonable" is very elastic in its meaning. It lacks the quality of certainty that is desirable in a statute. One man may give it a definition of a very broad, and another man a very narrow, significance. In this instance of its use we think it must be interpreted by its context, the purview of all the related words in the statute, and especially by the nature of the duty which is being exercised, in determining the quality of the act or thing presented for judgment. A dictionary meaning is "not exceeding the bounds of reason or common sense" (Cent. Dic.), and an eminent author there quoted says that the word "denotes a character in which reason (taking it in its largest acceptation) possesses a decided ascendant over the temper and passions." In view of several recent decisions of the Su-

preme Court of the United States, it is doubtful whether this statute intends any closer definition of the quality of an act done by the commission which will defeat its validity than that it is prohibited by the Constitution, or by legislation clearly, or by necessary implication, forbidding it. We are impressed that this is what that court intended to hold as the limitation of the power of the commission. We are not required by the exigencies of this case to do more than say that in our opinion the allegations of actual facts contained in the bill do not show that the commission exceeded its powers or prescribed rates so unreasonable as to justify the interposition of the court. If the statement of general conclusions were sufficient, perhaps a case is made, for there are plenty of such. But these, supported only by mere opinions, cannot be accepted as sufficient for the purpose of invoking our jurisdiction to interfere.

It is not alleged in the bill that the rates that the commission prescribed are confiscatory. It appears that for 20 years the rates which the complainant charged were the same as the schedule now complained of, and it is not claimed that they were not remunerative. But it is said that the old rates were required to be as low as they were because of the competition engendered by transportation by sea and rivers, and that the complainant some two years ago raised the rates to their present standard because that competition had measurably, if not altogether, ceased. And this is the gist of the matter. But it seems to us that all it amounts to is that it was one of the elements to be considered by the commission. The other elements which the commission considered may have persuaded it that the rates proposed were not unreasonable.

It appears that some two years before the present complaints were made the New Orleans Board of Trade or some mercantile association of that city had complained of the through rates as being unreasonable and excessive because those rates amounted to more than the sum of the local rates on parts of the through transportation. A practice had grown up whereby shippers sent their goods on the local rate to the intermediate point where it was reshipped to its destination on another local rate. This practice was in some degree counteracted by the irregular device of giving special rates to shippers, or some of them. In response to the complaint last mentioned, the railroad company took a unique way of removing the grounds of it by raising the local rates so that their sum should equal the through rate. This was not at all the consummation which the merchants were seeking. They had only served the interests of the railroad company. Finally they lodged these complaints.

The commission in its report, in the course of the discussion, makes a pertinent reference to the rates prevailing in other cities on the Mississippi and Ohio rivers which compete with New Orleans for the trade in the localities affected by the rates to and from New Orleans. And it is shown that the latter is put to a disadvantage by the comparison. We quote (Rep. of Com. 236):

"With respect to the through rates from New Orleans to Montgomery, Selma, and Prattville, and to the southeastern territory, it was shown that the merchants of New Orleans have heretofore made ineffectual efforts to se-

cure better rates to this territory, as higher rates were in effect from New Orleans to this territory than existed from distributing centers at greater distances west and north of said territory, the situation being such that New Orleans was cut off from the trade of this section as to many products, and greatly restricted and burdened as to many others on account of the high rates of transportation."

Other grounds are stated on which the commission founded its opinion, and they seem germane to the inquiry. The difference of circumstances which will in one case justify an interference by the court, and in another case will not justify it, is illustrated by the decisions of the Supreme Court quite clearly, as we think, in the cases of Interstate Commerce Commission v. Northern Pacific Railway Company, 216 U. S. 538, 30 Sup. Ct. 417, 54 L. Ed. 608, and Interstate Commerce Commission v. Delaware, Lackawanna & Western Railroad Company, 216 U. S. 531, 30 Sup. Ct. 415, 54 L. Ed. 605, both decided March 7, 1910, on the one hand, and the case of Interstate Commerce Commission v. Illinois Central Railroad Company, supra, decided January 10, 1910, on the other. In the former cases questions of law were presented and decided, and the orders of the commission were overruled. In the latter questions of fact committed to the judgment of the commission were presented for review, and the order of the commission was sustained. But it is unnecessary to pursue the subject further if we have correctly interpreted the scope of the power of the commission.

It is further urged that the alteration proposed would derange the schedule of rates on other routes, and that this would present difficulties of great moment. But these difficulties, if they exist, would be likely to attend any change of rates between any localities, and the result of the argument would be that, when once a general scheme of rates had been settled, they must remain for an unlimited time unchangeable in any part of the territory, a result which would be wholly inadmissible. Besides, we conceive that, when the complainant raised its rates, it encountered like difficulties, and it does not appear they were then insurmountable, at least that they were not so much so as to deter it from changing its rates. If any such difficulty arises, it will be a matter for the commission to adjust when it is made to appear.

In this connection we may refer to another objection to the order which the complainant makes. It is that:

"The report and order of the commission in this case affects rates of numerous carriers from and to numerous points, none of which had any opportunity to be heard before the defendant herein in support of their present rates, and it is also respectfully submitted that in that respect the complainant and other carriers affected by the report and order of the commission, if enforced, will be deprived of their property without due process of law, in violation of the Constitution of the United States, and more particularly the fifth amendment thereto."

By the thirteenth section of the act, the commission is required, when a complaint stating the facts is made, to forward the same "to such common carrier, who shall be called upon to satisfy the complaint or to answer the same in writing within a reasonable time to be specified by the commission." It is obvious that the purpose was

to require that notice should be given to the party immediately interested, and not to those remotely concerned. It is a novel and unreasonable proposition that, when rates in a given locality are drawn in controversy, notice must be given to every carrier who may be in the sucession of all or any interstate transportation which includes that in question. The procedure prescribed is analogous to that in all legal controversies, and must be deemed sufficient. The objection must be overruled.

If such an order as is here contested were to be held to be beyond the power of the commission, and that precedent were to be followed, its functions would be frittered away, piecemeal, and the result must be that the power to regulate rates through the means provided by the statute would be so absurdly inadequate as to furnish no reason for its existence.

In conclusion we are of opinion that, the conditions for the exercise of the power and duty existing, the commission was bound to prescribe some rates for the future transportation of freight by the railroad company. What those rates should be, whether they should remain as fixed by the railroad company or whether they should be other rates, was a matter committed by the statute to the commission, and was a matter to be settled by its opinion as to what was just and reasonable, and that, when so settled, its determination is binding, and is not subject to judicial review, unless it is made to appear that the commission in making it has not merely erred in the exercise of its power, or has proceeded upon grounds and reasons which to a court might seem unsatisfactory, but has violated some distinct paramount right secured by the Constitution or otherwise vested in the carrier, or in the public. And we are unanimously agreed that in the case presented such conditions do not appear, and that there is no legal reason why the order of the commission should be disturbed.

The motion for an injunction must therefore be denied.