BALTIMORE & OHIO S. W. R. R. v. UNITED STATES (INTER-
STATE COMMERCE COMMISSION, Intervener).

(Commerce Court, April 9, 1912.)

No. 60.

RAILROADS (§ 51*)—INTERSTATE COMMERCE ACT—SWITCH CONNECTIONS—"LAT-
ERAL BRANCH LINE OF RAILROAD."

Within the meaning of section 1 of the Interstate Commerce Act (Act Feb. 4, 1887, c. 104, 24 Stat. 379 (U. S. Comp. St. 1901, p. 3154), as amended by Act June 29, 1906, c. 3591, § 1, 34 Stat. 584 (U. S. Comp. St. Supp. 1909, p. 1149), which provides that "any common carrier subject to the provisions of this act upon application of any lateral branch line of railroad * * * shall construct, maintain and operate upon reasonable terms, a switch connection with any such lateral branch line of railroad," etc., and further providing (as amended by Act June 18, 1910, c. 309, § 7, 36 Stat. 545 [U. S. Comp. St. Supp. 1911, p. 1284]) that, if it fails to make such connection on application, the Interstate Commerce Commission may, on complaint and after a hearing, order it done, whether a road is or is not a "lateral branch line of railroad," and entitled to invoke the powers of the Commission, depends on the relation which it bears to the line with which switch connection is asked, and not upon its relation to the shippers or territory. It is such a lateral branch when it is tributary to and dependent on the other line for an outlet, or in other words is essentially a feeder, but not when it is in effect an independent and competing line, although it does not compete as to a portion of the territory involved, and such dependent relation is not established by the fact that it seeks the connection at one of its terminals.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 116–118, 120; Dec. Dig. § 51.*]

Petition by the Baltimore & Ohio Southwestern Railroad Company and the Norfolk & Western Railway Company against the United

States and the Cincinnati & Columbus Traction Company, in which the Interstate Commerce Commission intervenes. On motion to dismiss. Overruled.

For opinion of the Interstate Commerce Commission, see 20 Interst. Com. R. 486.

Edward Barton, Theodore W. Reath, and R. Walton Moore (Joseph I. Doran, on the brief), for petitioners.

Winfred T. Denison, Asst. Atty. Gen., and Blackburn Esterline, Sp. Asst. Atty. Gen., for the United States.

C. Bentley Matthews, for Cincinnati & Columbus Traction Co.

Charles W. Needham, for Interstate Commerce Commission.

Before KNAPP, Presiding Judge, and ARCHBALD, HUNT, CARLAND, and MACK, Associate Judges.

ARCHBALD, Judge. This is a bill to set aside an order of the Interstate Commerce Commission. The proceedings before the Commission were instituted by the Cincinnati & Columbus Traction Company, an electric suburban railway, incorporated under the laws of Ohio, against the Baltimore & Ohio Southwestern Railroad and the Norfolk & Western Railway, two separate trunk lines running east and west across the state of Ohio. The proceedings were taken under the first section of the Interstate Commerce Act to compel a switch connection at separate points with each of the railroads mentioned, and also to secure through routes and joint rates under the fifteenth section. There was a prayer in the latter connection that the railroads be required to exchange cars and equipment. The Commission in a joint order against both roads substantially granted the relief prayed for.

The provisions of the act with regard to the compelling of switch connections are as follows:

"Any common carrier subject to the provisions of this act, upon application of any lateral, branch line of railroad, or of any shipper tendering interstate traffic for transportation, shall construct, maintain, and operate upon reasonable terms a switch connection with any such lateral, branch line of railroad, or private side track which may be constructed to connect with its railroad, where such connection is reasonably practicable and can be put in with safety and will furnish sufficient business to justify the construction and maintenance of the same; and shall furnish cars for the movement of such traffic to the best of its ability without discrimination in favor of or against any such shipper. If any common carrier shall fail to install and operate any such switch or connection as aforesaid, on application therefor in writing by any shipper *or owner of such lateral, branch line of railroad,* such shipper *or owner of such lateral, branch line of railroad* may make complaint to the Commission, as provided in section thirteen of this act, and the Commission shall hear and investigate the same and shall determine as to the safety and practicability thereof and justification and reasonable compensation therefor, and the Commission may make an order, as provided in section 15 of this act, directing the common carrier to comply with the provisions of this section in accordance with such order, and such order shall be enforced as hereinafter provided for the enforcement of all other orders by the Commission, other than orders for the payment of money."

The words in italics were not in the act at the time the application for the switches in question was made to the railroads, nor at the

time of the complaint to the Commission, which followed, but were introduced over a year afterwards, in June, 1910, by way of amendment. At the time the proceedings were instituted, therefore, the traction company had no right to file the complaint, and the Commission, in consequence, except for the change in the law, would have been without authority to entertain it. Interstate Commerce Commission v. D., L. & W. R. R., 216 U. S. 531, 30 Sup. Ct. 415, 54 L. Ed. 605. After the testimony had been taken, however, and before any order had been entered, in March, 1910, immediately following the decision just cited, the case was reopened at the instance of the traction company to permit two shippers along the line of the road, one at Marathon and the other at Hillsboro, to be added as complainants. This was objected to by the railroads, on the ground that it could not overcome the want of jurisdiction when the case originated, and could not in any respect supply the necessary preliminary application in writing, which is required by the statute as the basis of the subsequent proceedings. The Commission overruled the objection, and, having considered the case on the merits, made the following order:

"This case coming on to be further considered, and it appearing that the parties in interest have failed to put in effect the findings made by this Commission in its report herein, dated March 14, 1911, and that the above-named complainant petitions by counsel for an order of relief in the premises:

"It is ordered that defendant the Baltimore & Ohio Southwestern Railroad Company be, and it is hereby, notified and required to construct, on or before the 15th day of February, 1912, and thereafter to maintain and operate during a period of not less than two years, a switch connection for the transfer of interstate traffic to and from the line of the above-named complainant company at Maderia, Ohio, the expense of installing such connection to be borne by said complainant.

"It is further ordered that said defendant the Baltimore & Ohio Southwestern Railroad Company be, and it is hereby, notified and required to construct, on or before the 15th day of February, 1912, and thereafter to maintain and operate during a period of not less than two years, a switch connection for the transfer of interstate traffic to and from the line of the above-named complainant company at or near Hillsboro, Ohio, the expense of installing such connection to be borne by said complainant.

"It is further ordered that defendant Norfolk & Western Railway Company be, and it is hereby, notified and required to construct, on or before the 15th day of February, 1912, and thereafter to maintain and operate during a period of not less than two years, a switch connection for the transfer of interstate traffic to and from the lines of the above-named complainant company at or near Hillsboro, Ohio, the expense of installing such connection to be borne by said complainant.

"And it is further ordered that defendants the Baltimore & Ohio Southwestern Railroad Company and Norfolk & Western Railway Company, according as their various lines may run, be, and they are hereby, notified and required to establish and put in force, on or before the 15th day of February, 1912, and for a period of at least two years thereafter to maintain, through routes to and from interstate points to and from all points on the complainant's line between and including Boston and Dodsonville, in the state of Ohio, in order that shippers at and between those points may have access to and from interstate points by interchange of cars under through billing and through charges based upon the rates of the respective carriers herein to and from the junction points established by this order, the complainant carrier having filed its local rates with this Commission as applicable to interstate movements over such through routes."

Several objections are made to this order. In the first place, renewing the one made before the Commission, it is contended that the introduction, while the case was pending before the Commission, of entirely new and different complainants, who had made no previous application for the switches, was beyond the power of the Commission to allow, and vitiates the proceedings. An initial application in writing from the party entitled to make it at the time is essential, as it is said, in order to comply with the statute, and cannot be dispensed with nor afterwards supplied, and, with all that has been done, is still lacking. Nor is this met, as it is urged, by the suggestion that the Commission is an administrative body not hampered by rules, and thus competent to reform the proceedings in the way which was done to meet the exigency.

It was also further objected that the Commission failed to determine the compensation to be severally made to the railroads for the switch connection with each of them which was ordered, having simply directed that the expense of installation should be borne by the traction company, without more, although the statute requires that, along with the question of the safety, practicability and justification for the switch connection, the Commission shall determine the reasonable compensation for it.

And it is finally objected that, in excess of its powers, or even of Congress itself to require (Central Stock Yards Co. v. Louisville & Nashville R. R., 192 U. S. 568, 24 Sup. Ct. 339, 48 L. Ed. 565; Id. 212 U. S. 132, 29 Sup. Ct. 246, 53 L. Ed. 441), the Commission ordered an interchange of cars along with through billing.

These are serious objections, which would have to be carefully considered, except for the conclusion which we have reached on the underlying question, viz., whether the traction company's road is a "lateral branch line of railroad" within the meaning of the statute, which, if found against that company, is conclusive.

The Cincinnati & Columbus Traction Company was organized and is operated under the laws of Ohio as an electric interurban railway, and is classified by those laws with street railways, by the provisions for which, and not those for steam railroads, it is controlled and regulated. It was chartered to construct a line of this character from Cincinnati to Columbus something over 100 miles, which has actually been built from Norwood, a suburb of Cincinnati, to Hillsboro, about half the distance. It is a common carrier of persons and property, and is also engaged in the transportation of express matter.

The Baltimore & Ohio Southwestern Railroad is a consolidated corporation organized under the laws of Ohio and Indiana, and operating an eastern and western trunk line, through and across those states, into and through the state of Illinois, and also into the state of Kentucky. It reaches Hillsboro by a branch line which connects with its main line, running to Cincinnati.

The Norfolk & Western Railway is organized under the laws of Virginia, and operates a line of railway extending through parts of Ohio, West Virginia, Kentucky, Maryland, North Carolina, and Ten-

nessee. It also has a branch line to Hillsboro, which connects with its main line to Cincinnati.

In relative position to the line of the Cincinnati & Columbus Traction Company the Baltimore & Ohio Southwestern is to the north and the Norfolk & Western to the south of it; the traction company's railroad being intermediate between the two and substantially dividing the diamond-like section of territory lying in between them. At Norwood the station of the traction company immediately adjoins that of the Baltimore & Ohio Southwestern, and for about 6 miles east from there its line not only parallels, but is contiguous to the right of way of, that railroad, while a few miles further on, at Perinton, it practically adjoins the right of way of the Norfolk & Western, which it similarly parallels for about 4 miles to Stonelick; and at the other or eastern end, for a distance of some 4 or 5 miles, at Hillsboro, it again parallels the tracks of the Baltimore & Ohio Southwestern, the rights of way of the two roads being immediately adjacent.

As found by the Commission in its report, the communities common to the traction company and the railroads at the eastern end of the line in the vicinity of Hillsboro are reasonably well served by those roads with respect to interstate shipments; and the same is true also of the places at the other end, from Stonelick westward, some of which are within a stone's throw of either the Norfolk & Western or the Baltimore & Ohio Southwestern. But at Boston, to the east of there, a town of some 500 inhabitants, the distance is about 5 miles by the country roads to Batavia, and something less than that to Baldwin, both of them stations on the line of the Norfolk & Western, and not less than 8 miles to the nearest station on the Baltimore & Ohio Southwestern, while Dodsonville, a town of 150 people, still further east towards Hillsboro, is also some 4 or 5 miles away from any station on the Baltimore & Southwestern and as much as 8 miles from the nearest station on the Norfolk & Western. And between Boston on the west and Dodsonville on the east, a distance of about 20 miles, there are several villages, the largest of which is Fayetteville, with 700 inhabitants, which are from 5 to 12 miles distant from one or the other of the steam roads in question.

Conceiving that the first set of places described were sufficiently served in interstate commerce by the Norfolk & Western Railway or the Baltimore & Ohio Southwestern Railroad, the Commission declined, so far as they were concerned, to make any order establishing through routes or joint rates between the steam roads and the traction company. But, on the other hand, this not being the case between Boston and Dodsonville, by reason of the distance from the steam roads, approximating not less than 5 miles in each instance, through routes and joint rates were established, and a switch connection given to make this effective. This connection was directed to be made, as to the Baltimore & Ohio Southwestern Railroad, at or near Hillsboro on the eastern end, and at Madeira, a few miles out of Norwood, on the western, and as to the Norfolk & Western at Hillsboro only, nothing being said as to any connection with it to the westward. The exact points where the connections should be made were not indicated, but the feasibility

of connecting in each instance is asserted, in view of the fact that when the traction road was in process of construction, 10 or more years ago, there was such a physicial connection with the one road at Madeira on the western end and with both roads on the eastern end at a point spoken of as Hillsboro Junction. It is intimated that, if the parties cannot agree as to the specific place for making the connection in each case, a more definite order will be entered.

In considering whether upon this showing the Cincinnati & Columbus Traction Company is a lateral branch railroad, within the meaning of the law, it is to be observed that, according to the test applied by the Commission, it is held to be such as to places and shippers along its line in the intermediate territory between Dodsonville and Boston, remote from and not sufficiently served by the trunk lines, but not as to those east or west of there, as the road approaches its termini, where this is not the case. But it is obvious that this is not and cannot be the correct criterion. A road is or is not a lateral branch railroad, according to the relation which it bears to the line with which a switch connection is asked. And this relation is one of road to road, and not of shippers or territory. A road, in other words, does not have the character of a branch or lateral road as to some shippers and territory, and not have it as to others. There is no such dividing up or limiting it, nor can it be of that shifting kind. Looking to the purpose of the law, a road is a lateral branch road when it is tributary to and dependent on another for an outlet; that is to say, where it is essentially a feeder, contributing traffic, and capable of interchanging it therewith. It is not such where it is in effect an independent and competing line. Nor is this any less the case because it may not compete as to a portion of the territory involved. It is the general effect which decides, and that is not in doubt here. All three roads in the present instance have the same general east and west direction, and so far as concerns Hillsboro on the east and Cincinnati or Norwood on the west, run between the same points. For half this distance also one or other of the steam roads draws its local traffic from and serves substantially the same territory as the traction company. And so clearly are they, within the limits named, competing lines, that admittedly any attempt to consolidate the traction company with either of them would offend against the state if not the federal law. Neither is it every carrier that is entitled to a switch connection with every other. As is said in the Rahway Valley Railroad Case, 216 U. S. 531, 30 Sup. Ct. 415, 54 L. Ed. 605:

"The object was not to give a roving commission to every road that might see fit to make a descent upon a main line."

It is the dependent or tributary character which gives rise to the right, and that is not determined by mere proximity or terminal approach, or the fact that the road seeking a connection has come to the end of its line. The contrast in the statute is with a private side track constructed to connect with an interstate carrier, with which a lateral branch road is thus associated and presumably intended to be compared. The point here is that the traction company's road, instead of being dependent or tributary, is in its own peculiar sphere,

and, as to both the steam roads, an equal, independent, and competing line. Nor is this affected by the fact that as at present constructed it extends no further than Hillsboro or Norwood, and that upon the arrival at either of these places its carriage of persons or property is at an end. This is true even of a trunk line, when its terminus is reached, without thereby making out the necessary relation by which a switch connection with another road is able to be compelled. It may be that some shippers along the line of the traction company's road are not so fully accommodated as they might be, as the case stands; and their needs are to be consulted to a certain extent without doubt. But this is not controlling, and their rights have necessarily to be worked out through the road for which in each instance a switch connection is sought, the character of which as a lateral branch line is only incidentally affected thereby. Without undertaking, therefore, to further define a "lateral branch line of railroad," we are clearly of opinion that the road of this traction company does not come within any reasonable meaning of the language used in the statute to describe the class of roads entitled to a switch connection. And if we are right in this view, the Commission was without jurisdiction to make the order in question.

A preliminary injunction was therefore properly ordered, and the motion to dismiss will be overruled.